Reversed and remanded and Opinion filed June 22, 2004









Reversed and remanded and Opinion filed June 22, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01176-CR

____________

 

THE STATE OF TEXAS, Appellant

 

V.

 

DARRELL WARREN
WALKER,
Appellee

 



 

On Appeal from the 122nd
District Court

Galveston County, Texas

Trial Court Cause No. 02CR1755

 



 

O P I N I O N

The issue in this case is whether an
affidavit in support of a request for a search warrant contains facts
establishing probable cause.  After being
indicted for possession of a controlled substance, cocaine, in an amount of 400
grams or more, with intent to deliver, appellee Darrell Warren Walker filed a
motion to suppress evidence, including cocaine, found in his residence during a
search pursuant to a warrant.  The trial
court granted the motion to suppress, and the State appeals.  Concluding the search warrant affidavit was
sufficient to establish probable cause the evidence would be in Walker=s residence, we
reverse and remand for further proceedings consistent with this opinion.








FACTUAL AND PROCEDURAL BACKGROUND

On December 12, 2001, Officer Mark Miller,
who was then employed as a narcotics investigator with the Galveston Police
Department, applied for a search warrant. 
In his affidavit, he alleged the following could be found at Walker=s residence at
1102 Natchez Drive in Texas City: 
cocaine, ledgers and financial information, and narcotic paraphernalia
used in the manufacture, delivery or sale of cocaine.  After setting forth his background in
narcotics investigations, Miller described the investigation leading to his
belief the preceding items could be found at Walker=s residence:

In December of 2001, Your Affiant obtained information
from a cooperating individual, who will Hereinafter be referred to as CI, this
CI will remain nameless for the security and safety of the CI.  The CI stated that Ricky Edward Baker is a
multi ounce cocaine trafficker that obtains his, Baker=s, cocaine from Darrell Wand Walker AKA AMoonie@, who resides at [1102 Natchez Drive, Texas City], and
is a cocaine dealer and routinely maintains a quantity of cocaine for sale at
his, Walker=s, residence. 
The CI further stated that the CI has purchased cocaine from Baker on
numerous occasions during the last several weeks and knows that Baker obtains
Baker=s cocaine from Walker.

Inv. Miller conducted a NCIC/TCIC check on Walker and
the criminal history shows that [W]alker has one conviction for dangerous
drugs.

On 1211-2001, CI contacted
Baker who stated that Baker was going to Texas City between the hours of 7:00
PM and 8:00 PM to obtain a quantity of cocaine from Walker.           

On 12-11-2001, your Affiant with assistance from other
Law enforcement agencies sat surveillance on Baker=s residence located at 610 Ferry Road #15, in
Galveston, Galveston County, Texas.

The surveillance group observed Baker drive to 1102
Natchez, in Texas City, Galveston County, Texas, where Officer Robles observed
Baker enter said residence.  Officer
Robles later observed Baker exit the residence at 1102 Natchez and walk to
Baker=s vehicle a 1996 Ford Taurus bearing Texas license
plate XZC-27Z.  Officer Robles observed
Baker walk to Baker=s vehicle and open the trunk lid on Baker=s vehicle. 
Officer Robles then observed Baker place a package on the passenger side
area of the trunk and then attempted to cover the package with some type of
cloth.  Officer Robles then observed
Baker enter listed vehicle and depart listed residence.








 

Miller stated the surveillance team then
followed Baker south on Interstate 45, where DPS Trooper Reyer stopped Baker
for traffic violations.  After Reyer
initially obtained Baker=s consent to search Baker=s vehicle, Officer
Valdez arrived with AQui,@ a certified
narcotic detection canine.  Baker then
withdrew his consent to search and Valdez commanded Qui to perform a perimeter
check on Baker=s vehicle. 
Qui alerted to the rear passenger side trunk of Baker=s vehicle.  Valdez opened the trunk and discovered a
quart-size zip-lock bag under a blue rag. 
The bag contained a large quantity of a substance that gave a positive
reaction for cocaine when Reyer tested it. 
Reyer discovered the cocaine in the same area of the trunk where Robles
observed Baker place the package.

Miller also set forth the basis for his
belief the CI was credible and the information reliable:

Your
Affiant believes this CI to be credible and the information reliable.  This CI has provided intelligence information
regarding persons actively engaged in violations of the Health and Safety Code
Chapter 481, specifically Delivery of Cocaine on many occasions over the past
three months.  On each and every occasion
this information provided by the CI has proved true and correct.  Your Affiant has been able to verify this
intelligence information through your Affiant=s own independent knowledge of
Controlled Substance violations in the GALVESTON County area and through
conversations with other officers in the GALVESTON County Area who are assigned
to the Narcotics Enforcement.  In
addition; this CI has provided information and assistance which lead [sic] to
the developing of several felony deliveries of Controlled Substance violations,
to wit: Cocaine on 2 separate persons.

Finally, Miller observed, given their
respective experiences, he and the CI could recognize cocaine in its various
forms and packaging for sale and distribution. 
Miller also explained the basis for his belief that items in addition to
cocaine could be found at Walker=s residence.  In Miller=s experience,
persons involved in the sale and distribution of cocaine maintain documents,
lists of suppliers and customers, financial records, and narcotic
paraphernalia.








A magistrate issued the search warrant on
December 12, 2001.  The officers
executing the search found approximately a kilogram and a half of cocaine at
Walker=s residence.  A grand jury indicted Walker for possession
of a controlled substance, cocaine, in an amount of 400 grams or more, with
intent to deliver.[1]

Setting forth multiple grounds, Walker
filed a motion to suppress the evidence seized in the search.  He subsequently narrowed his argument to a
challenge to the sufficiency of the affidavit to support the issuing judge=s determination of
probable cause.  Following a hearing, the
trial court granted the motion.  The
State filed this interlocutory appeal.

DISCUSSION

Issue Presented    

In a single issue, the State argues the
trial court erred in granting Walker=s motion to
suppress.  The State contends the search
warrant and supporting affidavit sufficiently established probable cause for
the issuing judge to conclude drugs were present at Walker=s residence.  Walker points to the double hearsay (Baker=s statements to
the CI, level one, which were related to Miller, level 2) in the affidavit and
argues the information contained in the affidavit did not provide a substantial
basis for crediting the hearsay at each level.

Legal Standards and Standard of Review

The constitutions of the United States and
the State of Texas guarantee individuals the right to be free from unreasonable
searches and seizures.  U.S. Const. amend. IV; Tex. Const. art. I, ' 9.  In Texas, the affidavit supporting a search warrant must
state probable cause.  Zarychta v.
State, 44 S.W.3d 155, 165 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).           








To determine whether the facts alleged in an affidavit
sufficiently support a search warrant, a magistrate or a court examines the
totality of the circumstances   See
Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983); Ramos
v. State, 934 S.W.2d 358, 362B63 (Tex. Crim.
App. 1996).  The allegations in an
affidavit are sufficient if they would Ajustify a
conclusion that the object of the search is probably on the premises.@  Ramos, 934 S.W.2d at 363.  In determining the sufficiency of a search
warrant affidavit, a reviewing court may consider only the facts found within
the four corners of the affidavit.  Jones
v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992).   Nevertheless, the reviewing magistrate is
permitted to draw reasonable inferences from the facts and circumstances
alleged, and must interpret the affidavit in a common sense and realistic
manner.  See Lagrone v. State, 742
S.W.2d 659, 661 (Tex. Crim. App. 1987).

In reviewing the trial court=s ruling on the
motion to suppress, we apply a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000).  We give almost
total deference to the trial court=s determination of
historical facts that depend on credibility and demeanor, but conduct a de
novo review of the trial court=s application of
the law to facts if resolution of those ultimate questions does not turn on
evaluation of credibility and demeanor.  Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); see Carmouche,
10 S.W.3d at 327.

Because probable cause to support the
issuance of the warrant is determined from the Afour corners@ of the affidavit
alone, the trial court does not make credibility choices in determining the
sufficiency of an affidavit to establish probable cause.  Burke v. State, 27 S.W.3d 651, 654
(Tex. App.CWaco 2000, pet. ref=d) (citing Wynn
v. State, 996 S.W.2d 324, 326B27 (Tex. App.CFort Worth 1999,
no pet.)).  Thus, we review de novo
the trial court=s ruling on the sufficiency of the
affidavit.  See Johnson v. State,
68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002); Guzman,
955 S.W.2d at 89.








Nevertheless, our scrutiny of the
sufficiency of an affidavit, like the trial court=s scrutiny, does
not take the form of a de novo review; instead, we determine whether the
magistrate had a substantial basis for concluding that a search would uncover
evidence of wrongdoing.  Gates,
462 U.S. at 236, 103 S. Ct. 2331; Daniels v. State, 999 S.W.2d 52, 54
(Tex. App.CHouston [14th Dist.] 1999, no pet.).  In conducting this review, we give great
deference to the magistrate=s determination of
probable cause.  Ramos, 934 S.W.2d
at 363; Daniels, 999 S.W.2d at 54. 
If in a
particular case it may not be easy to determine whether an affidavit
demonstrates the existence of probable cause, the resolution of such doubtful
or marginal cases should be largely determined by the preference to be accorded
warrants.  Lopez v. State, 535
S.W.2d 643, 647 (Tex. Crim. App. 1976).

Analysis

Officer Miller, the affiant in the present
case, relied in part on information he received from a confidential informant,
who, in turn received information from Ricky Baker, Walker=s purported
customer.  Double hearsay may be used to
show probable cause if the underlying circumstances indicate a substantial
basis for crediting each level of hearsay.  
Allen v. State, 899 S.W.2d 296, 299 (Tex. App.CHouston [14th
Dist.] 1995), pet. dism=d, improvidently
granted, 945 S.W.2d 829 (Tex. Crim. App. 1997).  Moreover, although an informant=s veracity,
reliability, and basis of knowledge are highly relevant in determining the
value of an informant=s report, these elements are not
independent requirements but are closely intertwined issues that illuminate the
overall question of whether there is probable cause.  Gates, 462 U.S. at 230, 103 S. Ct. at
2328. 








According to the affidavit, the
confidential informant said he had purchased cocaine from Baker several times
during the previous several weeks. 
Miller stated the confidential informant had provided intelligence information
regarding controlled substances violations on many occasions over the previous
three months and, on each occasion, the information proved true and
correct.  An affidavit in support of a
warrant to search for narcotics need not provide more specific details about
the informant=s reliability than to state the informant
provided information in the past regarding narcotics trafficking, which
information had proved correct.  Blake
v. State, 125 S.W.3d 717, 726 (Tex. App.CHouston [1st
Dist.] 2003, no pet.) (citing Torres v. State, 552 S.W.2d 821, 824 (Tex.
Crim. App. 1977)).  Furthermore, because
such a statement, when interpreted in a realistic and common‑sense
manner, indicates the informant=s familiarity with
controlled substances, the affiant need provide no additional details to
describe the informant=s qualifications in recognizing
drugs.  Id. (citing Torres,
552 S.W.2d at 824).

According to the affidavit, on December
11, 2001, the confidential informant contacted Baker, who stated he would be
going to Texas City between 7:00 p.m. and 8:00 p.m. to obtain cocaine from
Walker.  From the affidavit, it appears
the confidential informant provided this information to Miller.[2]

The confidential informant also stated
Baker obtains his cocaine from Walker, who routinely keeps a quantity of
cocaine for sale at his (Walker=s) residence.[3]  From the affidavit, this latter information
appears to be based on observations by Baker, not by the confidential
informant.  In the early stages of the
investigation, Baker was the only apparent source of information that placed
cocaine in Walker=s residence.[4]








In the affidavit, however, Miller does not
rely solely on the confidential informant=s information to
show there was cocaine in Walker=s residence.  Instead, Miller relies on his own and other
officers= observations
during their surveillance of Baker while he was at Walker=s residence and
during the subsequent traffic stop. 
Those observations included seeing Baker enter Walker=s residence, later
leave the residence, place a package on the passenger side of the trunk, and
attempt to cover it with some type of cloth. 
Officers then followed Baker from Walker=s residence until
Baker was stopped for a traffic violation. 
During the stop, officers found crack cocaine in a quart-size zip lock
bag under a blue rag in the same area of the trunk where Baker was observed
placing the package when he left Walker=s residence. 

The affidavit here compares more than
favorably to those held sufficient in Carrillo v. State, 98 S.W.3d 789
(Tex. App.CAmarillo 2003, pet. ref=d); and Ramos
v. State, 31 S.W.3d 762 (Tex. App.CHouston [1st Dist]
2000, no pet.).   In Carrillo, the
affidavit  provided in part:

(B) Within the last 24 hours
Affiant was able to make an undercover purchase of a substance believed to be
Cocaine from a subject.  Affiant met with
this subject and paid in advance for a quantity of Cocaine.  The subject advised Affiant he/she had to
travel to another location to receive the cocaine.  This subject left Affiant and drove directly
to this residence.  Upon arriving, this
subject went inside the residence, and exited a short time later.  The amount of time the subject spent inside
the residence was consistent with a narcotics transaction.  The subject then left and drove a short
distance to a pay phone, where a call was placed.  After the call, this subject drove directly
back to this residence and went inside again. 
When he/she arrived the second time, a 1991 Plymouth Van had arrived
bearing Texas Registration DB28CX.  After
a short time, this subject left this residence and drove directly back to
Affiant, where a quantity of cocaine was delivered to Affiant.  This subject was kept under surveillance during
this entire time and met with no other subjects.  The substance purchased tested positive for
cocaine using a Scott Reagent Field Test kit. 
Affiant is able to recognize Cocaine and other controlled substances.

 

(C) Lubbock Power and Light records
indicate a Virginia Carrillo as the resident of this address.  Lubbock Police Department records indicate an
Angelo Rufus Carrillo and Mary Ann Carrillo as the residents of this address.  The listed vehicle returns to Angel Rufus
Carrillo at this resident [sic].

 

Carrillo, 98 S.W.3d at 792.








The Carrillo court of appeals
rejected the defendant=s argument that the case involved a
confidential informant performing a Acontrolled buy@ with a possible
motive to mislead the police regarding the source of the cocaine.  Id. at 792B93.  The court also rejected the defendant=s argument that
the absence of a showing an occupant of the residence gave the subject the
cocaine weighed against a finding of probable cause.  Id. at 793.  The court observed, AThe question for
the magistrate=s decision was if there was a fair
probability that cocaine could be found in the house rather than whether
someone in the house gave it to the subject.@  Id. 
Finally, the court distinguished the case before it from Hass v.
State, which Walker cites in the present appeal:

In Hass, the court held a
showing that police found contraband on passengers of a car departing a storage
facility did not justify a search of the facility.  However, in this case, the subject went to
the house after offering to sell cocaine and delivered the substance after
returning from the house.  Thus, the
facts before us are distinguishable from those before the Hass court.

 

Id. (citing Hass v. State, 790 S.W.2d
609, 612 (Tex. Crim. App. 1990)) (citation omitted).

Similar to the situation in Carrillo,
and unlike that in Hass, the police in the present case had information,
set forth in the affidavit, that Baker was going to Walker=s residence to
obtain cocaine.  After Baker left the
residence, he was in possession of the same substance the police believed he
went to obtain.  Nothing in the record
before us suggests the police found anything other than cocaine in Baker=s trunk when he
was stopped.

In Ramos, the affiant stated he
received information that the residence to be searched was being used by a
Hispanic male to store numerous pounds of marijuana and possibly cocaine with
the intent to distribute that marijuana and cocaine to other individuals
throughout the area.  Ramos, 31
S.W.3d at 763.  The affiant then
described police surveillance on the residence, terminating in discovery of
twenty pounds of marijuana in a pick-up truck being driven by a man who had
spent the night at the residence.  Id.
at 763B64.  The court of appeals summarized the affiant=s description of
the surveillance as follows:








During the surveillance the police
observed appellant, whose description was consistent with the information
received from the informant.  In the
morning, a man who had spent the night in the house exited the house and got
into a white pick‑up truck that appeared to have been in the driveway all
night.  Although there was a gap in
surveillance during the early morning hours, the affidavit states the truck was
in the same place, indicating it had not been moved during the time the
surveillance team was gone.  Once the
truck left the house, the affidavit shows that it made no stops such as to
permit it to pick up a 20‑pound bag. 
The presence of the large, dark bag in the white bed of the truck and
the Aheat runs@ [a driver=s efforts to determine whether or
not he is under surveillance] through the neighborhood indicate that the driver
knew that there was a bag in the truck that contained contraband.  Because 20 pounds of marihuana has substantial
value, it is reasonable to infer that it was not left overnight in the truck,
but rather was placed in the bed of the truck when the driver exited the house
and entered the truck.  The informant had
said there were numerous pounds of marihuana at the house.

 

Id. at 765 (footnote omitted).

Unlike the present case, the officers in Ramos
were unsure whether the driver had placed anything in the truck when he got
into the truck and left the residence.  Id.
at 764.  Also, unlike the present case,
there was a gap in the surveillance.  Id.
at 763B65.  Thus, the surveillance described in the
affidavit in the present case produced more facts connecting the contraband in
the stopped vehicle with the residence that was the subject of the search
warrant than did the surveillance described in the Ramos affidavit.

Walker, however, argues his case is
analogous to Lowery v. State, 98 S.W.3d 398 (Tex. App.CAmarillo 2003, no
pet.); State v. Ozuna, 88 S.W.3d 307 (Tex. App.CSan Antonio 2002,
pet. ref=d); Barraza v.
State, 900 S.W.2d 840 (Tex. App.CCorpus Christi
1995, no pet.); and Lowery v. State, 843 S.W.2d 136 (Tex. App.CDallas 1992, pet.
ref=d).  We disagree.

In the 2003 Lowery case, the
confidential informant reported he had been in the residence to be searched and
had spoken with a person named Golden who appeared under the influence of
methamphetamine.  Lowery, 98
S.W.3d at 400B01. 
The appellate court summarized the insufficiency of the affidavit as
follows:








[T]he pertinent and substantive
allegations purportedly justifying the search of the residence consisted of
nothing more than the statement that methamphetamine was cooked within the
previous 24 hours at some unmentioned place by Golden and someone else, Golden
was later found intoxicated, Golden was previously at some unmentioned location
where drug paraphernalia was seized at some time or another, and appellant was
previously arrested for possessing a controlled substance.

 

Id. at 401.  The
appellate court also observed, ANotably absent
from the affidavit . . . is any mention of . . . the presence of chemicals or
equipment in the residence that could be used to >cook= methamphetamine,
[or] the presence of methamphetamine or matter that looked like it in the
residence (aside from that allegedly coursing through Golden=s body).@  Id.

In Ozuna, the  police sought to search Ozuna=s residence for
heroin and stolen property.  Ozuna,
88 S.W.3d at 309.  The affiant stated
that a named informant said Ozuna was a heroin supplier and younger men stole
items for Ozuna in exchange for drugs.  Id.  The informant also stated Ozuna was in
possession of stolen bicycles and computers. 
Id.  A second named
informant confirmed the first=s statement.  Id. 
Other information in the affidavit included a report of recovery of a
stolen bicycle from Ozuna=s brother=s truck,
information about an arrest warrant for Ozuna on multiple charges, and a
two-year-old search of Ozuna=s father=s residence,
immediately above Ozuna=s, which yielded a usable amount of
heroin.  Id.  There is nothing in the appellate opinion to
suggest either informant said stolen items or heroin were at Ozuna=s residence.  There is also nothing to suggest the
affidavit contained any information about surveillance on Ozuna=s residence.








In Barraza, the affiant stated a
reliable and credible confidential informant advised another officer that a
person by the name of Gann was enroute to Barraza=s residence to
purchase a quantity of marijuana.  Barraza,
900 S.W.2d at 841.  The informant
described Gann=s car and provided the licence plate
number.  Id.  Officers then conducted surveillance at the
intersection of a highway and a farm to market road, which  Aat some point@ intersected the
road where Barraza=s residence was located.  Id. at 841, 842.  The officers observed Gann=s car, stopped it,
and discovered five pounds of suspected marijuana.  Id. at 841.  As the court of appeals observed, AThere is nothing .
. . in the affidavit to show when, where, or from whom [Gann] acquired the
marihuana.  The affidavit also fails to
show whether or not Mr. Gann=s vehicle was seen
at the suspected place or even on the street of the suspected location.@  Id. at 842.  In contrast to the affidavit in Barraza,
Miller=s affidavit sets
out facts supporting a reasonable inference Walker=s residence was
the source of the cocaine in Baker=s trunk.

The 1992 Lowery case centered on an
untested informant, a relative of a person who purchased amphetamines at the
residence that was the subject of the search warrant: 911 Camellia Drive.  See Lowery, 843 S.W.2d at 139B40.  The parties agreed that this untested
informant was the Acritical tipster@ because he
actually reported the presence of amphetamines at the address.  Id. at 140.  Although the tipster stated he had been in
the residence within the previous forty-eight hours, he apparently had no
personal knowledge amphetamines were located in the house, but only had been
told they were there.  See id. at
139, 140.[5]  The State, however, contended the following
information in the affidavit established probable cause to search the
residence:  (1) several informants told
an Officer Crawford there was a drug lab located in an underground house where
David Lowery and Steve Patton lived; (2) subsequent investigation showed Lowery=s address was 911
Camellia Drive and corroborated that the house had underground rooms;  (3) Officer Crawford said Patton drove a
black Mercedes, and the affiant regularly observed a black Mercedes parked at
the house over a two‑month period; (4) a reliable informant reported
hearing about an amphetamine lab on Camellia Drive;  and (5) the critical tipster, a relative of a
drug purchaser, heard about the presence of amphetamines inside the house at
911 Camellia Drive.  Id. at 140.








The court of appeals disagreed.  Id. at 141.  The court acknowledged an informant=s tip combined
with independent police investigation may provide a substantial basis for the
probable‑cause finding.  Id.
(citing Janecka v. State, 739 S.W.2d 813, 825 (Tex. Crim. App.
1987)).   The court, however, observed:

The affidavit reflects that police
surveillance and investigation corroborated the following facts:  (1) Lowery and Patton lived at 911 Camellia
Drive;  (2) the house located at that
address had underground rooms;  and (3)
during a two‑month period, Officer Reynolds saw a black Mercedes at 911
Camellia Drive on several occasions.  However,
this corroborates only innocent facts, not suspicious or criminal activity
related to the possession of amphetamine at 911 Camellia Drive.  The corroborated facts do not provide any
indicia of reliability regarding the statements of the Acritical tipster@ or of any of the other informants
that amphetamines were located in the house.

 

Id. at 141B42.[6]

None of the cases on which Walker relies
involved police surveillance matching the level of surveillance in the present
case, surveillance which included (1) observing Baker, who had stated he was
going to obtain cocaine, enter and leave the subject residence, (2) observing
Baker place an object in the trunk of his car, (3) following the car, and, (4)
after stopping the car, retrieving cocaine from the same part of the trunk
where the object had been placed.  Unlike
the affidavits in the two Lowery cases, Ozuna, and Barraza,
the search warrant affidavit in the present case contains facts supporting a
reasonable inference cocaine would be found in the residence to be searched.








Probable cause sufficient to support a
search warrant exists if the facts contained within the four corners of the
search warrant affidavit and the reasonable inferences drawn therefrom justify
the magistrate=s conclusion that the object of the search
is probably on the premises at the time of the warrant=s issuance.  Cassias v. State, 719 S.W.2d 585, 587B88 (Tex. Crim.
App. 1986).  Because the search warrant
affidavit established probable cause to believe cocaine was present at Walker=s residence, the
trial court erred in suppressing the evidence found there.

We therefore sustain the State=s sole issue.  We reverse the cause for further proceeding
consistent with this opinion.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Opinion filed June 22, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Publish
C Tex. R. App. P. 47.2(b).











[1]  See Tex. Health & Safety Code Ann. ' 481.112(a) (Vernon 2003).





[2]  At the
suppression hearing, Miller testified he listened to a conversation between
Baker and the confidential informant, but Miller did not include this
information in the search warrant affidavit.





[3]  From the
affidavit, it appears Baker was the source of the confidential informant=s information that Walker was a cocaine dealer.





[4]  Miller=s representation that documents and
drug paraphernalia also were in Walker=s residence were based on Walker=s being a cocaine dealer and Miller=s experience and training regarding
persons involved in the sale and distribution of cocaine.





[5]  The affidavit
paragraph reporting the tipster=s information read in part:  AThis
untested informant also stated to Ofc. White that there was a large quantity of
amphetamines inside the residence of 911 Camellia Drive, Duncanville, Dallas
County, Texas.  This untested informant
was inside the residence within the past 48 hours and was told that the
amphetamines were there.@  Lowery v. State, 843 S.W.2d 136, 139 (Tex. App.CDallas 1992, pet. ref=d).





[6]  To the extent
the 1992 Lowery court focused on the fact the surveillance corroborated Aonly innocent facts,@ its
analysis is inconsistent with Illinois v. Gates in which the Supreme
Court stated:

 

[P]robable cause requires only a probability or
substantial chance of criminal activity, not an actual showing of such
activity. By hypothesis, therefore, innocent behavior frequently will provide
the basis for a showing of probable cause; to require otherwise would be to sub
silentio impose a drastically more rigorous definition of probable cause
than the security of our citizens=
demands. . . .  In making a determination
of probable cause the relevant inquiry is not whether particular conduct is Ainnocent@ or Aguilty,@ but the
degree of suspicion that attaches to particular types of noncriminal acts.

 

Illinois v. Gates, 462 U.S. 213, 244 n.13, 103 S. Ct. 2317, 2335 n.13 (1983).