STATE of Texas, Appellant,

v.

Benito OZUNA, Appellee.

No. 04–01–00407–CR.

Court of Appeals of Texas,
San Antonio.

July 24, 2002.

Discretionary Review Refused
Jan. 22, 2003.

David Clay Cowan, Cowan & Cowan, P.L.L.C., Alfred V. Sumpter, Law Office of Alfred V. Sumpter, Del Rio, for Appellant.

Fred Hernandez, Dist. Atty., Del Rio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

Opinion by PAUL W. GREEN, Justice.

After being indicted for drug charges, Benito Ozuna filed a motion to suppress the fruits of a search warrant. The trial court granted the motion to suppress, finding the affidavit supporting the warrant did not contain probable cause. The State appeals the ruling.

## Background

Detective Scott McDonald applied for a search warrant, attaching his notarized statement regarding his suspicions that Ozuna and his brother possessed heroin and stolen property at Ozuna's residence. Detective McDonald's affidavit explained that in January 2000, Detective McDonald stopped David Sanchez, who told him that Ozuna was a heroin supplier. Sanchez said Ozuna's brother made daily trips to Mexico to purchase heroin and cocaine for Ozuna. Sanchez also stated Ozuna was a member of the Mexican Mafia and that younger men, such as David Saldivar, stole items for Ozuna in exchange for drugs and to gain acceptance into the Mexican Mafia. Sanchez stated Ozuna was in possession of stolen bicycles and computers. A statement taken from Joe Pesina in late January 2000 confirmed Sanchez's statement. Pesina told another detective that he gave Ozuna a stolen compact disc player in exchange for heroin. In addition, Pesina said that Ozuna carries heroin in his pants pockets and possessed several stolen computers.

Detective McDonald also learned of Angela Mohney's stolen bicycle report. Mohney told police David Saldivar was attempting to sell a bicycle resembling hers. On February 1, 2000, Detective McDonald located a vehicle owned by Ozuna's brother that was parked at a business known "to be a second hand store that many heroin addicts sell stolen property." After arresting Ozuna's brother and another occupant of the truck, Detective McDonald found a stolen bicycle in the rear of the vehicle. Mohney later identified the stolen bicycle as hers.

Detective McDonald's affidavit also included information about an arrest warrant issued for Ozuna by the Austin Parole Division of the Department of Criminal Justice on February 1, 2000. The warrant stated Ozuna was wanted for aggravated assault with a deadly weapon, murder with a deadly weapon, and forgery. Detective McDonald's affidavit also discussed the October 7, 1998 search of Ozuna's father's residence, which is directly above Ozuna's residence. The search revealed a usable amount of heroin and resulted in the arrest of Ozuna's father.

Based on the affidavit, the magistrate issued a warrant for Ozuna's arrest and the search of his premises. Del Rio Police officers executed the warrant and found Ozuna in possession of heroin. Ozuna was subsequently indicted for drug possession. He filed a motion to suppress, arguing the affidavit did not demonstrate probable cause. The trial court granted the motion, and the State appeals to this Court.

## Standard of Review

 To be valid, a search warrant must be supported by an affidavit setting forth substantial facts establishing probable cause. TEX.CODE CRIM. PROC. ANN. arts. 1.06, 18.01(b) (Vernon Supp.2000); *Mayfield v. State*, 800 S.W.2d 932, 934 (Tex. App.-San Antonio 1990, no pet.). Probable cause exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex.Crim.App.1986). Importantly, the magistrate is not required to find proof beyond a reasonable doubt or by a preponderance of the evidence, but only a probability that contraband will be found in a particular place. *Johnson v. State*, 803 S.W.2d 272, 288 (Tex.Crim.App.1990), *rev'd* on other grounds, *Heitman v. State*, 815 S.W.2d 681, 685 (Tex.Crim.App.1991).

 In this case, the trial court suppressed the evidence despite the magistrate's issuance of a warrant. In review-

ing a ruling on a motion to suppress, we generally: (1) afford almost total deference to the trial court's determinations of historical facts and credibility; and (2) review *de novo* determinations that do not turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002). A trial court reviewing a magistrate's determination to issue a warrant is limited to examining only the four corners of the affidavit to determine whether probable cause exists. *Jones v. State*, 833 S.W.2d 118, 123 (Tex.Crim.App.1992). Because the trial court is not required to make credibility choices in assessing the sufficiency of the affidavit, we review the trial court's ruling *de novo*. *Wynn v. State*, 996 S.W.2d 324, 326–27 (Tex.App.-Fort Worth 1999, no pet.). In other words, we apply the same standard that the trial court applied when it evaluated the magistrate's decision to issue the warrant. *Id.* at 326. During that review, we afford great deference to the magistrate's determination that the affidavit was sufficient to support the issuance of the warrant. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Duncan*, 72 S.W.3d 803, 806 (Tex.App.-Fort Worth 2002, no pet. h.).

■■■ During our review, we look only to the four corners of the supporting affidavit and do not consider testimony presented at a pretrial motion to suppress. *Massey v. State*, 933 S.W.2d 141, 148 (Tex.

Crim.App.1996). The affidavit need not reflect the direct personal observations of the affiant so long as the magistrate is informed of some of the underlying circumstances supporting the affiant's belief that any informant involved, whose identity need not be disclosed, was credible or his information reliable. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Although an informant's veracity, reliability, and basis of knowledge are highly relevant in reviewing the sufficiency of an affidavit, these elements are not each independent requirements, but closely intertwined issues that simply illuminate the overall question of whether there is probable cause to believe that contraband or evidence is located in a particular place.[1] An affidavit may also rely on information received through an informant if the statement is reasonably corroborated by other matters within the officer's knowledge. *Id.* at 242, 103 S.Ct. 2317. Further, we remember that the magistrate may draw reasonable inferences so long as the affidavit is interpreted in a common sense and realistic manner. *Lagrone v. State*, 742 S.W.2d 659, 661 (Tex.Crim.App.1987).

### Discussion

■■■ The trial court ruled that Detective McDonald's affidavit did not contain probable cause to support the search for heroin.[2] In granting the motion to suppress, the trial court found:

---

**1.** *Gates*, 462 U.S. at 230, 103 S.Ct. 2317. If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge does not bar a finding of probable cause based on his tip. *Id.* at 233, 103 S.Ct. 2317. Conversely, even if some doubt exists as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-

hand, entitles his tip to greater weight than might otherwise be the case. *Id.* at 234, 103 S.Ct. 2317.

**2.** In reviewing the several challenges raised by Ozuna, the trial court found the magistrate was acting in a neutral and detached manner and that the warrant specifically described the place to be searched and the items seized with sufficient particularity.

This affidavit is certainly more than a bare bones affidavit as it states certain suspicions, and beliefs, and provides underlying factual circumstances and a basis of knowledge on its face. The reviewing magistrate must however look further into the totality of the circumstances. He must assess the credibility and basis of knowledge of the informant and weigh any other information. It is here where the evidence suggests that the magistrate did not receive information which would enable him to sufficiently examine the credibility of the informant and his basis of knowledge. Factors to support the informant as to the search for heroin are noticeably absent: there is no firsthand observations by the informant, no degree of detail is provided, there exists no corroboration of the informant's information by an officer's independent investigation, and the informant did not testify at the probable cause hearing. This court finds that probable cause did not exist for the search of heroin.

The court also found the affidavit provided no information demonstrating the reliability of the informants:

> The reliability of an informant and the factual basis of the information are factors to be considered by the magistrate in examining the totality of the circumstances for finding probable cause. The evidence reveals that the magistrate was not made aware of the fact that the informants were heroin addicts and these statements were made under questionable circumstances. No evidence was presented to the magistrate regarding the veracity or the reliability of the informants. Clearly no probable cause exists for the issuance of the warrants based upon the statements of these two informants.

Finding that no probable cause for the heroin search existed, the trial court did not reach Ozuna's challenges based on staleness and reckless disregard for the truth.

Information regarding the defendant's possession of drugs, alone, is insufficient to warrant the search of his home. *See Cassias v. State*, 719 S.W.2d 585, 590 (Tex.Crim.App.1986); *Robuck v. State*, 40 S.W.3d 650, 654–55 (Tex.App.-San Antonio 2001, pet. ref'd). In *Cassias v. State*, the Court of Criminal Appeals reviewed the validity of a warrant issued for the search of the defendant's residence. *Cassias*, 719 S.W.2d at 588. The only "nexus" connecting the suspected drugs to the house was a statement that "one Keith Henderson was observed by affaint [sic] on 4–2–80 carrying brick type packages believed to be marijuana." *Id.* at 587. Henderson had been seen in the back yard with a plastic tub and tubing, but had not been seen in the yard or house with the "brick packages." *Id.* The *Cassias* court held:

> We cannot, in the interest of a common sense and realistic approach to interpretation of affidavits "infer" a connection between informant's observation of appellant with contraband and the residence at 724 Del Mar Street. Further, we can only speculate it was there that the "brick type packages" were seen, and we find no objective data to show it was reasonable to believe they were marihuana.

*Id.* at 590.

In *Robuck v. State*, narcotics agents conducting surveillance at Federal Express offices discovered a box addressed to Robuck. *Robuck*, 40 S.W.3d at 654. From their experience, the officers knew Robuck to be a drug trafficker. *Id.* Further, the officers noted the box and shipping label resembled previously seized boxes that contained contraband. *Id.* After learning

the return address was fictitious and confirming the odor of contraband with a drug dog, the officers obtained a search warrant for the box. *Id.* The box contained $45,000 in currency. *Id.* at 655.

The officers then learned that Robuck had contacted Federal Express several times regarding the box's delivery. *Id.* The officers requested a second warrant to search Robuck's home. *Id.* The officers' affidavit detailed the events leading up to the first warrant, the search of the box, and that they "have also learned and know that due to the long term involvement of [Robuck] in the drug trade that quantities of currency and other evidence documents are constantly maintained by [Robuck] at the suspected place." *Id.*

The *Robuck* court examined the validity of the two search warrants. In analyzing the legality of the first search warrant, the court found the warrant was supported by: (1) the officers' knowledge that Robuck was a known drug trafficker receiving a box that was consistent with labels on boxes, which contained contraband observed and seized by the officers in the past; (2) the positive alert the narcotics detection dog made on the box; and (3) evidence that the sender's address on the shipping label was fictitious. However, the court held the second warrant issued for the search of Robuck's house was not justified, stating:

> No facts were contained in the affidavit that would support a conclusion that contraband or evidence of a crime would be found at Robuck's residence. The only statement contained in the affidavit

that relates to Robuck's residence is the generalized assertion that quantities of currency and other evidence documents would be constantly maintained at Robuck's residence given his long term involvement in the drug trade. This statement is too general to support the issuance of a search warrant for Robuck's residence.[3]

In general, to connect the suspected drugs with the defendant's premises, courts have found "controlled buys" and police verification of the events taking place before and after the "controlled buy" to be sufficient. *Compare Richardson v. State*, 622 S.W.2d 852, 857 (Tex.Crim.App.1981) (affidavit sufficient because the affiant swore he was an eyewitness to the events immediately preceding and following the informant's purchase of marijuana at the defendant's home) *and State v. Cantu*, 785 S.W.2d 181, 183–84 (Tex.App.-Houston [14th Dist.] 1990, pet. ref'd) (affidavit sufficient because the police officer, after learning that the defendant had drugs for sale and personal use at his premises, observed the defendant open the premises door with a key and observed the defendant engage in a narcotics transaction at the premises), *with Dees v. State*, 722 S.W.2d 209, 214–15 (Tex.App.-Corpus Christi 1986, pet. ref'd) (affidavit insufficient because it contained no information regarding the reliability of the informant and indicated no personal observations of the affiant regarding the transaction between the defendant and the affiant's agent) *and Adkins v. State*, 675 S.W.2d 604, 607 (Tex.App.-El Paso 1984)

---

**3.** *Id.* We note that Justice Duncan dissented to the majority opinion, stating:

> Like the majority, I do not believe that probable cause is established by a general statement that a "known drug trafficker" "constantly maintain[s]" at his residence "quantities of currency and other evidence documents." However, probable cause for

the issuance of a warrant to search Robuck's residence was established by the officers' statements that they had seized a box addressed to Robuck, the box contained $45,000 that smelled strongly of marijuana, and Robuck had been calling regarding the delivery of the box.

*Id.* (Duncan, J., dissenting).

(affidavit insufficient because it did not indicate whether the source of the tip was direct observation or reliable hearsay, it did not indicate a basis for the informant's reliability such as past performance, and it did not explain the nexus between the original tip and the officer's corroborative details), *rev'd* on other grounds, 717 S.W.2d 363 (Tex.Crim.App.1986).

In this case, Detective McDonald's affidavit provided evidence suggesting that Ozuna traded stolen items for drugs. It also contained evidence that Ozuna carried heroin on his person. However, the affidavit contained no evidence connecting the suspected heroin to Ozuna's *premises*. The affidavit also presented no evidence showing whether the informants had been used in the past and proven to be reliable. Although the State argues the trial court erred in "going beyond the four corners" of the affidavit,[4] the trial court, in granting the motion to suppress, need look no further than the affidavit itself to properly find that the affidavit presented no evidence connecting the suspected heroin to Ozuna's premises. We affirm the trial court's ruling.

*Conclusion*

We overrule the State's issue and affirm the ruling of the trial court.

---

4. The trial court found that "the informants were heroin addicts, and [their] statements were made under questionable circumstances" even though nothing in the affidavit supports this finding. The trial court also referenced the informant's failure to testify at the suppression hearing.