In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00264-CR
______________________________


ALVIN DEWAYNE STRONG, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 282nd Judicial District Court
Dallas County, Texas
Trial Court No. F-0534385-WS


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Alvin Dewayne Strong appeals from his conviction for theft of a welder, rotary
hammer, and cut-off saw owned by Shaun Murray. Five indictments were tried together. 
Strong pled guilty to the charges pursuant to a plea agreement and was placed on five
years' community supervision. The trial court revoked Strong's community supervision and
sentenced Strong to two years' confinement. The cases have been appealed separately.
Â Â Â Â Â Â Â Â Â Â Because the briefs and arguments raised therein are identical in all five appeals, for
the reasons stated in Alvin Dewayne Strong v. The State of Texas, cause number
06-05-00261-CR, we likewise resolve the issues in this appeal in favor of the State.
Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.




Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â April 10, 2006
Date Decided:Â Â Â Â Â Â Â Â Â June 6, 2006

Do Not Publish



e magistrate issued the search warrant. When the
warrant was executed, several individuals were at the residence, including Franklin. Franklin was
searched and was found to have drugs and more than $1,000.00 cash on his person. The parties
stipulated that on that date, Franklin was in possession of 11.85 grams of cocaine. 

II. Standard of Review 

 A trial court's ruling on a motion to suppress evidence is reviewed for abuse of discretion.
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Carter v. State, 150 S.W.3d 230,
235 (Tex. App.--Texarkana 2004, no pet.). "At a suppression hearing, the trial court is the exclusive
trier of fact and judge of the credibility of the witnesses." Turner v. State, 252 S.W.3d 571, 576
(Tex. App.--Houston [14th Dist.] 2008, pet. ref'd), cert. denied, 2009 U.S. LEXIS 1496 (U.S.
Feb.Â 23, 2009) (citations omitted). The appellate court should afford almost total deference to a trial
court's determination of the historical facts supported by the record, especially when the trial court's
decision was based on an evaluation of credibility and demeanor of witnesses. Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). 

 With regard to the appellate court's review of affidavits, the United States Supreme Court and
the Texas Court of Criminal Appeals have held that after-the-fact scrutiny by courts regarding the
sufficiency of an affidavit should not take the form of de novo review. Illinois v. Gates, 462 U.S.
213, 236 (1983); Swearingen v. State, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Texas
appellate courts should pay great deference to a magistrate's determination of probable cause. 
Swearingen, 143 S.W.3d at 811. Accordingly, courts should not invalidate warrants by interpreting
the affidavits in a "hypertechnical," rather than a common sense manner. Gates, 462 U.S. at 236. 
Moreover, the reviewing court has a duty to ensure that the magistrate had a substantial basis for
concluding that probable cause existed. Id.

 Franklin argues that the anonymous sources mentioned in the affidavit were not reliable or
credible, no facts were stated to show the bases of their knowledge, and the affidavit contained 
uncorroborated hearsay. 

 Many search warrant affidavits are based on hearsay from informants, but they must contain
facts to show the informant (1) had a valid basis for the belief that a crime had been committed and
evidence could be seized and (2) the affiant had a reason for believing that the informant was reliable
or the information credible. Aguilar v. Texas, 378 U.S. 108, 114-15 (1964). Whenever the police
officers rely on others to supply information concerning an alleged criminal offense, the informant's
"veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of
his or her report. But the United States Supreme Court in Gates held that these elements should not
be understood as entirely separate and independent requirements to be rigidly exacted in every case. 
Rather, they should be understood simply as closely intertwined issues that may usefully illuminate
the common sense, practical question whether there is "probable cause" to believe that contraband
or evidence is located in a particular place. Gates, 462 U.S. at 230. The test is the totality of
circumstances which relies less on technical, fact-intensive requirements and more on a
"common-sense" approach to finding probable cause. A deficiency in one prong of the test may be
compensated for by a strong showing in the other, or other indicia of reliability. Id. at 233. The
veracity and "basis of knowledge" of information given by informants may be used to illuminate the
"totality of circumstances" in order to establish probable cause, but an affidavit's failure to establish
"veracity," "basis of knowledge," and "reliability" does not, by itself, negate a magistrate's finding
of probable cause. Id. at 244-46. "It is enough, for purposes of assessing probable cause, that
"[corroboration] through other sources of information reduced the chances of a reckless or
prevaricating tale," thus providing "a substantial basis for crediting the hearsay." Id. at 244-45
(citations omitted). Finally, when the appellate court is faced with a doubtful or marginal case where
it is difficult to determine whether an affidavit demonstrates the existence of probable cause, the
resolution should largely be determined by the preference to be accorded to warrants. Id. at 237
n.10.

 Both the evidence presented at the motion to suppress and the trial are considered since the
issues raised in the suppression motion were relitigated at trial. Gutierrez v. State, 221 S.W.3d 680,
687 (Tex. Crim. App. 2007).

III. The Affidavit Was Sufficient

 Franklin complains the affidavit presented by Acker, and upon which the issued search
warrant was based, was not sufficient because the affidavit cited anonymous tips and statements
made by unidentified third parties which were not sufficiently corroborated. We disagree. It is true
law enforcement's suspicions were initially raised by receipt of two anonymous telephone calls. 
"[W]hen an anonymous tip is relied upon to furnish probable cause, the informer must assert
personal knowledge or there must be additional facts showing reason to believe that the contraband
sought will probably be where the information indicates it will be." Rojas v. State, 797 S.W.2d 41,
44 (Tex. Crim. App. 1990) (citing Gates, 462 U.S. 213; Angulo v. State, 727 S.W.2d 276 (Tex.
Crim. App. 1987)).

 Here, the affidavit stated one anonymous caller identified the address where the drugs were
located as 405 Gillespie Street, Jacksonville, Texas, and the other identified Patrick Ross as
delivering narcotics to a residence on Gillespie Street and identified the vehicle he was using. After
the first such call, Acker determined the person named in the anonymous call, Ross, had recently
been arrested for possession of a controlled substance, and possessed a vehicle that corresponded to
what the anonymous caller had said. There is no evidence that the anonymous calls were based on
information other than personal knowledge. After both calls, Acker set up surveillance at the
suggested location. He observed "high traffic," or several persons visiting the house for short
amounts of time. Acker then arranged for two cars he saw leaving the suspected residence to be
stopped. One of those drivers, stopped by Trooper Long, possessed marihuana, and admitted to
Acker he had bought that marihuana at the house in question. The second driver, stopped by
Constable Lee, stated she had been to the house in question, but had not bought drugs "this time." 
This additional police investigation corroborated the anonymous tip information. The fact that two
persons seen leaving the house in question either had purchased drugs or attempted to do so at that
house provides substantial corroboration of the tip given to the police that a person at 405 Gillespie
Street, Jacksonville, Texas, was selling narcotics. While the anonymous tip was not sufficient to
establish probable cause for the search warrant, it did begin the investigation process. The following
events progressively accumulated and corroborated the information from the anonymous tip and gave
the magistrate reason to believe that the contraband would probably be where the information report
indicated. By including in the affidavit the additional facts developed from the further investigation,
the issuing magistrate was presented with a substantial basis for concluding that probable cause
existed to search the house. Gates, 462 U.S. 246; Angulo, 727 S.W.2d at 279.

IV. Authorities Cited by Franklin

 Franklin cites State v. Ozuna and Cassias v. State to support the argument that mere
possession of drugs is not enough to warrant the search of a person's home. State v. Ozuna, 88
S.W.3d 307 (Tex. App.--San Antonio 2002, pet. ref'd); Cassias v. State, 719 S.W.2d 585 (Tex.
Crim. App. 1986). In Cassias, the affidavit supporting the search warrant alleged that subjects had
been seen carrying "brick type packages believed to be marijuana" and a "plastic tub with plastic
tubeing [sic]" being carried into the backyard; the affidavit also said the affiant had checked the
criminal histories of two individuals, showing at least one arrest about five months before the
application for warrant. However, nowhere were those two persons identified by the affiant. 
Cassias, 719 S.W.2d at 587. The Texas Court of Criminal Appeals held these disjointed allegations
were insufficient to support a finding of probable cause to believe drugs would be found at the
location, and the warrant had been erroneously issued. Id. at 590. In Ozuna, the court found that the
affidavit provided evidence suggesting that Ozuna traded stolen items for drugs and that Ozuna
carried heroin on his person, but it failed to suggest or show that heroin or evidence of a crime would
be found within Ozuna's residence. 

 Unlike the affidavits in Ozuna and Cassias, the affidavit in the case at bar contains specific
information from law enforcement, to the effect that a person seen leaving the suspected location was
found with drugs, and that person told the affiant he had just acquired those drugs at the suspect
location, and that Ross, the person named by the anonymous tips, was directly involved. While Ross'
past arrest for drug possession does not establish probable cause itself, it lends some credibility to
the anonymous tips; which is further corroborated by the statements of both the driver found with
marihuana, who said he got it at the house, and by the second driver who stated she regularly bought
drugs at the house. The instant case is distinguishable from Cassias and Ozuna. 

 Franklin also compares the instant situation to Robuck v. State, 40 S.W.3d 650 (Tex.
App.--San Antonio 2001, pet. ref'd). In Robuck, a first affidavit was used to authorize searching a
package at a Federal Express office, because Robuck was a "known drug trafficker." In the package
was found $45,000.00 that had a strong odor of marihuana. The same facts from the first affidavit
as well as the discovery of the cash were relied upon to secure a warrant for Robuck's house. 
However, nothing in that second affidavit supported a finding of probable cause that contraband
would be found at Robuck's residence. Id. at 655. Contrary to Franklin's assertion on appeal, there
were facts in Acker's affidavit to support a suspicion that drugs would be found at the house wherein
Ross was alleged to be found. 

 Franklin cites Lowery v. State, 843 S.W.2d 136 (Tex. App.--Dallas 1992, pet. ref'd), for the
proposition that anonymous tipsters, without assertion of their reliability, are insufficient to support
issuance of a search warrant. Again, Franklin ignores the other evidence obtained by law
enforcement in their subsequent investigation. In Lowery, the subsequent investigation only revealed
information which corroborated innocent facts; here, however, law enforcement found evidence that
specifically pointed to criminal activity. Lowery is distinguishable. Likewise, Franklin's reliance
on Cardona v. State, 134 S.W.3d 854 (Tex. App.--Amarillo 2004, pet. ref'd), is misplaced. In
Cardona, unnamed sources alleged methamphetamine was being produced in a machine shop;
however, the affidavit upon which the search warrant was issued failed to explain the significance
of the allegedly suspicious activities or distinguish those activities, or the chemical odor described,
from the normal activities of a machine shop. Acker's affidavit provides discernible and specific
corroboration of the anonymous tips he and the Jacksonville Police Department received, which sets
this case apart from the situation in Cardona. 

 We find the trial court did not abuse its discretion by denying Franklin's motion to suppress
evidence, and accordingly overrule Franklin's points of error. 

 We affirm the judgment.



 Jack Carter

 Justice


Date Submitted: June 25, 2009

Date Decided: July 10, 2009


Do Not Publish


1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann.
§Â 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.