# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00210-CR
NO. 03-07-00211-CR

**The State of Texas, Appellant**

**v.**

**Jesse Keith James, Appellee**

NO. 03-07-00212-CR
NO. 03-07-00213-CR

**The State of Texas, Appellant**

**v.**

**Caroline Blair, Appellee**

**FROM THE DISTRICT COURT OF LLANO COUNTY, 424TH JUDICIAL DISTRICT
NOS. 5812, 5814 & 5815, 5813, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING**

# M E M O R A N D U M   O P I N I O N

After they were indicted for manufacturing methamphetamine and endangering a child, appellees Jesse Keith James and Caroline Blair moved to suppress evidence seized during the execution of a warrant to search their residence. The motions were granted, and the State appeals. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West 2006). The question presented is whether

the affidavit supporting the search warrant stated probable cause. Because we agree with the district court's conclusion that the affidavit was inadequate, we affirm the court's suppression orders.[1]

No search warrant may be issued unless the issuing magistrate is presented with a sworn affidavit setting forth substantial facts establishing probable cause. *Id*. art. 18.01(b) (West 2005). Probable cause exists when the affidavit presents facts and circumstances sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.). The sufficiency of a search warrant affidavit is determined by considering the totality of the circumstances set forth in the affidavit. *Bradley*, 966 S.W.2d at 873 (citing *Illinois v. Gates*, 462 U.S. 213, 234 (1983)). The affidavit must be interpreted in a common sense and realistic manner, and reasonable inferences may be drawn from the facts and circumstances found within the four corners of the affidavit. *Jones v. State*, 833 S.W.2d 118, 123-24 (Tex. Crim. App. 1992); *Bradley*, 966 S.W.2d at 873. The issuing magistrate's determination of probable cause must be given great deference and will be sustained if the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990); *State v. Davila*, 169 S.W.3d 735, 738 (Tex. App.—Austin 2005, no pet.).

---

[1] The records before us contain written orders granting the motions to suppress in cause numbers 5812, 5813, and 5814, but it is undisputed that the district court granted the motions to suppress in all four causes.

On May 11, 2006, Llano County Deputy Ramona Faison applied for a warrant to search a residence located at 6730 County Road 216 H7 in Llano County. The affidavit described the residence as a single-story home and associated outbuildings located on a ranch approximately two hundred acres in size. The property is fenced and gated. The residence is on a dirt road approximately four hundred yards from County Road 216 and is not visible from the road.

In her affidavit, Faison states that she had probable cause to believe that methamphetamine, precursor chemicals, laboratory equipment, narcotics paraphernalia, and other evidence of a conspiracy to sell and distribute methamphetamine could be found at the residence based on these facts:

- James and Blair have a "criminal history" involving several offenses, including possession of marihuana (the only drug offense listed). The affidavit does not state that this history includes any convictions.

- Blair had resided at the suspect residence for approximately two years with her two children. The residence address was the one shown on Blair's driver's license. Child protective services workers had twice investigated James and Blair at that address for sexual assault of a child. The affidavit does not disclose the dates or results of those investigations.

- Neighbors had reported to the sheriff "on numerous occasions" that James "goes outside at all hours of the night and starts shooting a weapon randomly." According to a "cooperating individual," James had weapons hidden in several places on the ranch and had "displayed symptoms of paranoia." No facts relating to this informer's credibility or qualifications for diagnosing paranoia are mentioned. Based on her training and experience, Faison believed that James's behavior was common among long-term methamphetamine users.

- Faison had been monitoring the sale in Llano and Burnet Counties of products used in the production of methamphetamine. She had verified that between June 2004 and August 2005, James and Blair had purchased twenty boxes of over-the-counter medicines containing pseudoephedrine, six bottles

3

of hydrogen peroxide, three cases of matches, five bottles of Red Devil lye, and a one gallon bottle and six sixteen-ounce bottles of tincture of iodine at five named Llano stores. The affidavit explains how these products are used to manufacture methamphetamine through the "red phosphorous reduction method."

• Since August 1, 2005, James had been unable to purchase pseudoephedrine because he did not have a driver's license or other photo identification. Between August 2005 and May 2006, Blair had purchased pseudoephedrine products on thirty-nine occasions, sometimes purchasing multiple boxes from the same store on the same day.

• Blair's purchases increased beginning March 1, 2006. On March 13, 2006, Blair purchased one gallon of tincture of iodine, two bottles of "heat," and a large package of coffee filters at a Llano hardware store.[2] On the same day, Blair went to five different pharmacies in Llano and Burnet Counties, each identified in the affidavit, and purchased one or two boxes of pseudoephedrine or ephedrine products in each. On April 22, 2006, Blair returned to the same pharmacies and again purchased one or two boxes of pseudoephedrine in each store.

• On May 1, 2006, Faison was told by the an employee of the Llano hardware store that "about two (2) weeks ago" James, who the employee knew on sight, purchased two gallons of tincture of iodine, three or four bottles of "heat," a large package of coffee filters, and a pan.

• James had been seen by several unnamed individuals and by a named sheriff's deputy purchasing "large quantities" of matches, several gallons of distilled water, and "a couple of bottles" of isopropyl alcohol at a Llano grocery store. The date of these purchases is not stated.

The warrant was issued and executed on May 11, 2006. During the search, officers seized methamphetamine and other evidence underlying the instant indictments.

James and Blair moved to suppress the items seized on the ground that the affidavit contained no information warranting a belief that the pseudoephedrine and other items they had

---

[2] The "heat" referred to in the affidavit is not otherwise described.

allegedly purchased could be found at the residence or had been used there to manufacture methamphetamine. After hearing the arguments of counsel and taking the matter under advisement, the district court granted the motions to suppress in a ten-page order explaining its reasoning with citations to authority. The court concluded that even giving great deference to the issuing magistrate's determination of probable cause, the affidavit did not provide a substantial basis for concluding that a search of the residence would uncover evidence of wrongdoing at the time the warrant was issued. Specifically, the court held that the affidavit "clearly establishes [that] James Blair were involved in a conspiratorial agreement to obtain materials for the purpose of manufacturing methamphetamine, but the affidavit does not articulate sufficient facts to establish probable cause [to believe that] the manufacture of methamphetamine would occur at the location sought to be searched."

The facts stated in the affidavit suggest that James and Blair were involved in the unlawful manufacture of methamphetamine. But as the State concedes in its brief, the affidavit contains no facts directly suggesting that this criminal activity was taking place at the residence at 6730 County Road 216. For example, the affidavit does not state that James or Blair had been seen taking their suspicious purchases to the residence, that any person had seen chemicals, laboratory equipment, or methamphetamine at the residence, or that any activities or odors associated with the production of methamphetamine had been detected at the residence. Nevertheless, the State urges that inferences arising from facts stated in the affidavit support the magistrate's conclusion that there was probable cause to search the residence.

5

The State contends that the very location of the residence—in the country and not visible from the road—warrants the inference that a methamphetamine lab was being operated there. According to the State, "It is well known, and a reasonable inference, that the manufacturers of methamphetamine have a preference for rural, isolated settings." Next, the State argues that because "it is well known to law enforcement that child abuse and neglect is very often associated with criminal activity involving methamphetamines, the fact that these [child abuse] investigations occurred at that same residence" supports an inference that methamphetamine would be found there. Finally, the State contends that the information regarding hidden weapons, shots fired in the middle of the night, and James's paranoia "lead to a reasonable belief that criminal activity involving methamphetamine was occurring at the residence." The State argues that "it is a well established fact that persons involved with methamphetamine often evidence signs of paranoia and 'stay up all hours of the night.'" The State further urges that "the gun wielding is consistent in the experience of law enforcement to indicate clandestine drug activity was occurring at the residence." The State argues that the cited facts, taken together with the detailed information regarding the appellees' purchases of products used to produce methamphetamine, reasonably warrant the conclusion that James and Blair were manufacturing methamphetamine at the residence.

The information regarding the C.P.S. investigations, while it serves to establish that James and Blair lived at the location in question, does not contribute to a finding of probable cause to believe that methamphetamine or a methamphetamine lab could be found there at the time the warrant was sought. We do not accept the State's assertion that child abuse, in itself, is evidence of methamphetamine use. In any case, the affidavit does not reveal when the C.P.S. investigations took

6

place or state that any evidence of child abuse (or of methamphetamine production or use) was found during the investigations. The affidavit's descriptions of James's erratic behavior and firearms use also do not support an inference that evidence of unlawful methamphetamine-related activity would be found at the appellees' residence on May 11, 2006. The affidavit is silent as to when the described activities took place, and we have already noted that the affidavit does not contain any facts from which the issuing magistrate could conclude that the informer who supplied the information regarding James's hidden weapons and paranoid behavior was credible.

In essence, the only facts stated in the affidavit having any tendency to support a finding of probable cause to search the residence at 6730 County Road 216 are: (1) the appellees' purchases of suspiciously large quantities of pseudoephedrine and other products associated with the illicit production of methamphetamine, (2) the evidence that James and Blair lived at the residence, and (3) the location of the residence in a rural area. As the district court found, the first of these facts supports the belief that James and Blair were somehow involved in methamphetamine production. But the additional showing that James and Blair lived in a rural location does not alone support a finding of probable cause to believe that methamphetamine production was taking place at that location. In the absence of any showing that James and Blair had delivered the methamphetamine ingredients they purchased to their residence or of any other facts tending to suggest that methamphetamine production was taking place there, the affidavit does not provide a substantial basis for concluding that methamphetamine was being produced at that location.

In *Robuck v. State*, the warrant to search Robuck's residence was supported by an affidavit that described how the affiants had discovered $45,000 in currency bearing a strong odor

7

of marihuana in a box at the local office of a shipping company. 40 S.W.3d 650, 654-55 (Tex. App.—San Antonio 2001, pet. ref'd). The shipper's address on the box was fictitious. *Id*. The box was addressed to Robuck at his home, and Robuck had been calling the shipper inquiring about its delivery. *Id*. The affiants asserted that Robuck had "long term involvement . . . in the drug trade" and that "quantities of currency and other evidence documents are constantly maintained" by Robuck at his home. *Id*. at 655. The court of appeals held that the affidavit contained no fact statements that would support a conclusion that contraband or evidence of a crime would be found at Robuck's residence. *Id*. The general assertion, unsupported by any facts, that currency and other evidence were kept there was inadequate. *Id*.

The affidavit before us in the instant cause is weaker than the affidavit found wanting in *Robuck*. In that case, the box containing the odoriferous currency was addressed to Robuck at his residence. In this case, there are no facts placing the appellees' methamphetamine-related purchases at their residence.

In *Ozuna v. State*, the affidavit supporting the warrant to search Ozuna's residence contained statements of fact to the effect that Ozuna traded stolen items for drugs and carried heroin on his person. 88 S.W.3d 307, 313 (Tex. App.—San Antonio 2002, pet. ref'd). Beyond the fact that he lived there, however, the affidavit did not contain any facts suggesting that Ozuna kept, sold, or traded stolen goods for heroin at his residence. *Id*. The court of appeals held that the affidavit did not give the issuing magistrate probable cause to believe that heroin or stolen goods would be found at that location. *Id*.

8

The affidavit supporting the warrant to search the appellees' residence is comparable to the affidavit in *Ozuna*. Here, as in that case, there are facts tending to show that the appellees were engaged in unlawful conduct, but no facts showing that the unlawful conduct was occurring at their residence.

"It is one thing to draw reasonable inferences from information clearly set forth within the four corners of an affidavit. . . . It is quite another matter to read material information into an affidavit that does not otherwise appear on its face." *Cassias*, 719 S.W.2d at 590. Giving the determination of probable cause the great deference it is due, we agree with the district court that the affidavit did not provide the issuing magistrate a substantial basis for concluding that a search of the appellees' residence would uncover methamphetamine, precursor chemicals, laboratory equipment, or other evidence of the unlawful manufacture, sale, or possession of methamphetamine.

Citing the C.P.S. investigations mentioned in the affidavit and the dangerous chemicals and methamphetamine found during the search, the State argues in the alternative that the search of the appellees' residence should be upheld pursuant to the emergency aid component of the community caretaking doctrine. *See Laney v. State*, 117 S.W.3d 854, 860-61 (Tex. Crim. App. 2003) (citing *Mincy v. Arizona*, 437 U.S. 385, 392 (1978)). Aside from the fact that the State's argument relies in part on the evidence found during the search, which cannot be considered in determining whether the search was justified at its inception, the State did not present this argument to the district court. When appealing an order granting a motion to suppress, the State may not attack the ruling on a legal theory it did not present to the trial court. *State v. Huddleston*, 164 S.W.3d 711,

9

716 (Tex. App.—Austin 2005, no pet.).  The State is procedurally barred from asserting its community caretaking argument.

The orders granting the appellees' motions to suppress are affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   October 31, 2007

Do Not Publish

10