# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00417-CR

**David Alexander Bailey, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
NO. 7877, HONORABLE JOE CARROLL, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant David Alexander Bailey pleaded no contest to possessing more than 400 grams of methamphetamine with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(a), (f) (West Supp. 2009). The trial court adjudged him guilty and, pursuant to a plea bargain, imposed a thirty-five-year prison sentence. Appellant brings forward nine issues by which he contends that the trial court erred by overruling his pretrial motions to quash the indictment and to suppress evidence, the evidence is insufficient to support the conviction, and the written judgment of conviction does not conform to the court's oral pronouncement of sentence. We will modify the judgment and affirm it as modified.

**INDICTMENT AND EVIDENCE SUFFICIENCY**

The indictment contained two counts. Count one alleged that appellant "knowingly manufacture[d], by production, preparation, compounding, conversion, or processing, directly or indirectly by extraction from substance of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, a controlled substance, namely, Methamphetamine, in an amount of 400 grams or more." *See id*. § 481.002(25) (defining "manufacture"). Appellant moved to quash this count, urging that the State was required to specify whether he had manufactured the methamphetamine by production, preparation, compounding, conversion, or processing. The motion also argued that the State was required to specify whether the manufacturing was done by extraction, chemical synthesis, or a combination of the two. We need not decide whether the trial court erred by overruling the motion because the State subsequently dismissed count one, effectively giving appellant the relief he sought. Issue nine is overruled.

Appellant was convicted on count two of the indictment, which alleged that he "knowingly possess[ed], with intent to deliver, a controlled substance, namely Methamphetamine, in an amount of 400 grams or more." Appellant moved to quash this count on the ground that it failed to allege the penalty group, and he now asserts that the trial court erred by overruling the motion.

Appellant argues that the penalty group must be alleged and proved because the various controlled substance manufacturing, delivery, and possession offenses are defined according to the penalty group in which the substance appears. *See id*. §§ 481.112-118. Appellant reasons that because a person cannot be prosecuted for manufacturing, delivering, or possessing a substance that

2

is not listed in a penalty group, the penalty group must be alleged in the indictment. Although we agree with appellant's premise, we do not agree with his conclusion. Count two of the indictment alleged that appellant possessed methamphetamine with intent to deliver. Methamphetamine is listed in penalty group one. *See id*. § 481.102(6). The indictment gave adequate notice to appellant of the offense he was accused of committing. *See Bailey v. State*, 543 S.W.2d 653, 655 (Tex. Crim. App. 1976).

Alternatively, appellant contends that it was necessary to allege the penalty group because methamphetamine is also listed in penalty group three, as an isomer of phentermine. *See* Tex. Health & Safety Code Ann. § 481.104(a)(7) (West Supp. 2009). Accepting as true appellant's assertion that methamphetamine is an isomer of phentermine, methamphetamine nevertheless is not included in penalty group three because it is specifically listed in penalty group one. *See id*. ("unless listed in another penalty group"). Appellant also points out that methamphetamine is listed as a schedule II stimulant. *See id*. § 481.032. This is irrelevant because the criminal penalties for manufacturing, delivering, or possessing a schedule substance apply only if the substance is not listed in a penalty group. *See* Tex. Health & Safety Code Ann. § 481.119 (West 2003). Issue one is overruled.

Appellant contends that the evidence is insufficient to support his conviction. In a plea bargain case, the defendant must have the trial court's permission to appeal any matters except those that were raised by written motion filed and ruled on before trial. Tex. R. App. P. 25.2(a)(2). Appellant does not have the trial court's permission to challenge the sufficiency of the evidence, and the issue is not properly before us. *See Lyon v. State*, 872 S.W.2d 732, 736 (Tex. Crim. App. 1994)

(construing predecessor rule). In any event, appellant's sworn written judicial stipulation that he "intentionally and knowingly possess[ed], with the intent to deliver, . . . 400 grams or more of methamphetamine" is sufficient to support the finding of guilt. For the same reason that the State was not required to allege the penalty group in the indictment, it was not required to prove the penalty group in order to meet its burden of proof. Issue two is overruled.

**SUPPRESSION ISSUES**

Appellant contends that the trial court erred by overruling his motion to suppress the methamphetamine and other evidence seized during a search of his residence because the affidavit supporting the search warrant did not state probable cause. The affidavit was prepared and signed by Sergeant Rickye Feist of the Texas Department of Public Safety (DPS) on December 28, 2005. The warrant was issued and executed that same day.

The probable cause portion of the affidavit began by describing Feist's extensive training and experience in drug law enforcement. The affidavit then stated that in early 2005, DPS Lieutenant Jed Shelton, working with the rural area narcotics task force, received an anonymous telephone call. The caller told Shelton that appellant "was manufacturing and trafficking in methamphetamine." The informer also said that appellant worked at Larry's Lube in Lampasas. The affidavit went on to state that in May 2005, Shelton received another anonymous tip. This informer stated that appellant was manufacturing and selling methamphetamine at his residence, located at 705A Western Street, in Lampasas. The informer also told Shelton that "a couple of months" prior to the tip, appellant had had an accident while manufacturing methamphetamine and had blown a hole in the ceiling and roof of his house. According to the affidavit, Sergeant Mike Gulledge

4

investigated the second tip and observed a large patch on the roof of the house. Gulledge also identified appellant by personal observation and by his driver's license picture. Gulledge learned that appellant had a "lengthy criminal record including arrests for manufacturing/delivery of controlled substance in penalty group 1, and Forgery, securing execution of document by deception and tampering with government records. [Appellant] is on parole until July 07, 2007." The affidavit went on to state that on May 16, 2005, Gulledge met with appellant's parole officer, David Reed, in Lampasas and advised him of the allegations. Reed agreed to do a home visit. Reed went to Larry's Lube, picked up appellant, and went to 705A Western. While inside the residence with appellant, Reed "verified that there was a hole in the roof of the kitchen which was in the process of being repaired." Reed conveyed this information to Gulledge, who passed it on to Feist.

We quote most of the remainder of the affidavit:

> On 12-20-2005, DPS Narcotics Sgt. Rickye K. Feist was contacted by Lampasas Police Chief Tim Angerman, who advised that he had a source of information regarding the narcotics activities of DAVID ALEXANDER BAILEY.
>
> Sgt. Feist went to the Lampasas Police Department to personally interview the source who has been identified but wishes to remain anonymous due to safety reasons.
>
> The source told Sgt. Feist that the source has personal knowledge regarding the illegal manufacture of methamphetamines and has also been a user of methamphetamine. On or about 12-18-05 the source was at BAILEY's residence and personally observed crushed pseudoephedrine tablets on a plate inside BAILEY's dresser, two (2) plastic gas type containers in the kitchen sink with a black hose connecting the two (2) containers. The source also personally observed other chemicals under the sink area.
>
> The source stated that on or about 12-18-05 the source personally smelled a strong odor of Anhydrous Ammonia in the kitchen area.

5

The source told Sgt. Feist that BAILEY personally told the source that he was utilizing the containers to manufacture Anhydrous Ammonia.

The source told Sgt. Feist that on one occasion while BAILEY was manufacturing methamphetamine that the smell of Ammonia was so strong that it almost killed him.

The source also told Sgt. Feist that the source saw several plastic baggies of methamphetamine inside a dresser drawer in BAILEY's bedroom.

The source told Sgt. Feist that when BAILEY was finished manufacturing the illegal methamphetamine that BAILEY stored the containers under the kitchen sink area in his residence.

Sgt. Feist has received training and is certified in investigative techniques relating to clandestine methamphetamine laboratories and is also certified as a Site Safety Officer and is familiar with the manufacture of methamphetamine and that this information is consistent with the clandestine manufacture of methamphetamine.

The source told Sgt. Feist that source had personally observed and used methamphetamine with BAILEY on numerous occasions while at his residence.

. . .

On 12-22-05, Sgt. Feist had the source place a recorded phone call to BAILEY to discuss the manufacture of illegal methamphetamine. Sgt. Feist listened to the recording and heard during the conversation that BAILEY agreed to let the source assist him in the manufacture of methamphetamine on 12-27-2005.

Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.). The sufficiency of the affidavit is determined by considering the totality of the circumstances set forth within the four corners of the document. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Hennessy v. State*, 660 S.W.2d 87, 90 (Tex. Crim. App. 1983); *Bradley*,

6

966 S.W.2d at 873. The affidavit must be interpreted in a common sense and realistic manner, recognizing that reasonable inferences may be drawn from the affidavit. *Hespeth v. State*, 249 S.W.3d 732, 737 (Tex. App.—Austin 2008, pet. ref'd). The issuing magistrate's determination of probable cause must be given great deference and will be sustained if the magistrate had a substantial basis for concluding that probable cause was shown. *Gates*, 462 U.S. at 236-37; *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990).

We agree with appellant that the anonymous tips received in early 2005 did not in themselves give the magistrate probable cause to believe that methamphetamine was likely to be found inside appellant's residence on December 28, 2005. The information received from the two informers, in addition to being stale, contained no indicia of reliability. *See Gates*, 462 U.S. at 244-46; *Parish v. State*, 939 S.W.2d 201, 203 (Tex. App.—Austin 1997, no pet.). Although the fact that the roof had been damaged was corroborated, there was no corroboration regarding the cause of the damage. The parole officer's home visit with appellant at 705A Western did, however, confirm that this address was appellant's residence.

The anonymous source Feist interviewed on December 20 was also an informer of no established credibility. But unlike the earlier informers, this source provided information that was recent and detailed, bore an indicia of reliability, and was corroborated by the affiant. Read in a common sense manner, the affidavit told the magistrate that this source had been in appellant's residence on December 18 and had seen, heard, and smelled things that Feist, a trained and experienced narcotics officer, recognized were consistent with the illicit manufacture of

7

methamphetamine. Further, the source had called appellant on December 22 and, within Feist's hearing, arranged to manufacture methamphetamine with appellant on December 27. Although the source's claim to have seen methamphetamine in appellant's residence on December 18 was not specifically corroborated by Feist, the corroboration of the source's other incriminating statements gave the magistrate a reasonable basis for inferring that the claim was true. *See State v. Ozuna*, 88 S.W.3d 307, 310 (Tex. App.—San Antonio 2003, pet. ref'd). Giving the determination of probable cause the deference it is due, we hold that the magistrate had a substantial basis for concluding that methamphetamine would be found at appellant's residence on December 28, 2005. Issue three is overruled.

Appellant contends that the probable cause affidavit contained information that had been unlawfully obtained and should not have been considered in determining whether probable cause to search existed. First, appellant argues that appellant's parole officer unlawfully entered his residence in May 2005 under false pretenses. Second, appellant asserts that the December 22 telephone call was unlawfully intercepted. *See* Tex. Penal Code Ann. § 16.02 (West Supp. 2009). Neither of these contentions was presented to the trial court, and thus neither was preserved for appeal. *See* Tex. R. App. P. 33.1. Issue four is overruled.

Appellant contends that the affidavit contained material misstatements of fact. *See Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks*, it was appellant's burden to prove by a preponderance of the evidence that Feist gave the magistrate false information knowingly or intentionally, or with reckless disregard for the truth. *Id*. at 156; *Massey v. State*, 933 S.W.2d 141, 146 (Tex. Crim. App. 1996).

8

Appellant contends that Feist falsely stated in the affidavit that during the recorded telephone conversation between appellant and the source on December 22, appellant "agreed to let the source assist him in the manufacture of methamphetamine on 12-27-2005." Appellant urges that the transcription of this call shows that there was no mention during the call of methamphetamine, manufacturing, assisting, or the date.

The transcription contains the following exchange between the source (CI) and appellant:

CI: Do you think I could come Monday or Tuesday?

MR. BAILEY: You can come any time you want.

CI: Is the offer still on the table, me moving in so I can try to help myself out (inaudible)?

MR. BAILEY: Certainly.

. . .

MR. BAILEY: I mean, if you're not trying to help yourself, why should I continue to try and help you?

CI: Right. I'm making a rule for myself, like the only time I'm going to ever do dope right then is when I'm with you, at your house or whatever. It's not why (inaudible) you know what I mean? Yeah, I know it's very hard to quit anyway, but you know.

. . .

CI: I'm ready to, you know—I think I'm going to have to go about it in a weird way, you know, like I plan to, you know, quit all the dope and all that, but maybe for starters, you know, I can just (inaudible). Only time I do it is when I'm with you or whatever at your house or something like that, you know.

MR. BAILEY: Well, I don't see—

9

CI: There's less places to do it, less people to get it from, less—you know.

MR. BAILEY: I don't see that as what was causing your problem.

CI: I mean, I don't know.  I guess we can talk about it, but I'm not going to do anything until—you know, do anything until I go to your house with you there.  Can we wait for a while to (inaudible)?

MR. BAILEY: Huh?

CI: Can we wait?  Can we do it—Can we cook it there when I come like on Monday or Tuesday?  Because I know I'm going to be needing it bad.  I'm not going to lie.  Because I'm not going to be able to do anything while I'm at my grandma's.

MR. BAILEY: Yeah.  Don't worry about that.  It's not a problem.

CI: Oh, so we can do it there when I get there?

MR. BAILEY: Yeah.

When questioned at the suppression hearing regarding the accuracy of the affidavit's description of the telephone call, Feist testified that the affidavit reflected his understanding of what was said during the conversation "in terminology that we're used to in listening to narcotics conversations."  The trial court found Feist's testimony to be credible.  In overruling appellant's *Franks* contention, the trial court found:

> Persons who sell, manufacture or deal in illegal and controlled substances often speak obliquely and in street terminology regarding their plans and activities.  The recorded phone call includes discussions that are consistent with the manufacturing of methamphetamine.  Feist['s] description of the December 22, 2005 recording in the [probable cause affidavit] is true and accurate.  It is a reasonable interpretation for a trained and experienced narcotics officer such as Feist to relate in an affidavit for a search warrant that "BAILEY agreed to let the source assist him in the manufacture of methamphetamine on 12-27-2005."  12-27-2005 was the Tuesday following 12-22-2005.

We review a trial court's decision on a *Franks* issue under the same standard applied to other suppression issues, and thus we give almost total deference to the court's rulings on questions of historical fact and on applications of law to facts that turn on an evaluation of credibility and demeanor. *Fenoglio v. State*, 252 S.W.3d 468, 473 (Tex. App.—Fort Worth 2008, pet. ref'd). During the recorded conversation, appellant agreed with the source that "we [can] cook it there [appellant's residence] when I come like on Monday or Tuesday," which was December 26 and 27, 2005. This evidence, viewed in the light most favorable to the ruling and in the context of the remainder of the conversation, reasonably supports the trial court's finding that Feist had a good-faith belief that his description of the call was accurate. Appellant did not establish by a preponderance of the evidence that Feist's account was intentionally or knowingly false, or made with a reckless disregard for the truth.

Appellant complains of several other alleged misstatements in the affidavit, but he did not challenge any of them in his *Franks* motion or at the hearing. Issue six is overruled.

Appellant also contends that Feist deliberately omitted material information from the probable cause affidavit. He contends that Feist's affidavit failed to tell the magistrate: (1) appellant told the source on December 22 that he did not have any methamphetamine, (2) appellant told the source on December 22 that he did not want to make any methamphetamine, and (3) that the source did not go to appellant's residence on December 27 to make methamphetamine.

Neither the Supreme Court nor the court of criminal appeals has decided whether *Franks* applies to omissions from search warrant affidavits, but several federal and Texas courts of appeals have applied the *Franks* analysis to omissions. *See Darby v. State*, 145 S3d 714,

11

722 (Tex. App.—Fort Worth 2004, pet. ref'd) (collecting cases); *see also Massey v. State*, 933 S.W.2d 141, 146 n.3 (Tex. Crim. App. 1996) ("This Court has indicated that we might not recognize application of *Franks* to omissions of fact."); 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 6.39 (2d ed. 2001 & Supp. 2008) (hereafter "Dix & Dawson"). We will assume for the purpose of this opinion that *Franks* does apply to omissions of fact.

One of the alleged omissions from the affidavit—appellant's claim that he told the source on December 22 that he did not want to make methamphetamine—was not proved. The transcriptions of the December 22 telephone calls do not contain such a statement, and appellant cites only a leading question asked by defense counsel at the *Franks* hearing. Another of the alleged omissions— that the source did not go to appellant's residence on December 27—was not asserted below. The trial court found that the only omission asserted and proved—that appellant told the source on December 22 that he did not then possess any methamphetamine—was not a material omission. We agree. This fact, had it been included in the affidavit, would not have rendered the affidavit as a whole insufficient to show probable cause to search on December 28. *See Darby*, 145 S.W.3d at 722. Issue five is overruled.

Appellant was present at 705A Western Street when the police arrived to execute the search warrant. The record shows that he was taken outside and searched, and that a bag containing 5.5 grams of methamphetamine was found in his pocket. Appellant contends that this search was unlawful and that the trial court erred by failing to suppress the evidence seized. He bases this

12

contention on the fact that the warrant authorized only the search of the residence; it did not expressly direct the police to arrest or search appellant.

Both the warrant and the supporting affidavit stated that the premises at 705A Western was under appellant's control. Texas case law assumes that officers executing a search warrant may also detain and search a person found on the premises if that person is reasonably believed to be an occupant or otherwise directly associated with the premises. *See Worthey v. State*, 805 S.W.2d 435, 438 n.5 (Tex. Crim. App. 1991); *Conner v. State*, 712 S.W.2d 259, 260 (Tex. App.—Austin 1986, pet. ref'd); *see also* Dix & Dawson § 6.104 (2d ed. 2001). In any event, the officers had probable cause to arrest appellant based on their discovery of a large quantity of suspected methamphetamine and methamphetamine paraphernalia inside the house. They were authorized to search appellant's person as an incident of that arrest. *See Ker v. California*, 374 U.S. 23, 41 (1963). Issue seven is overruled.

In his remaining issue, appellant contends that the trial court's written judgment does not conform to the court's oral pronouncement of sentence. The sentence pronounced in open court was thirty-five years' imprisonment. The written judgment, in addition to the prison term, imposes a $2000 fine and orders appellant to pay $209 in court costs and $140 in restitution. The State concedes that the judgment should be reformed to delete the fine. Because "restitution is punishment," we conclude that the restitution order must also be deleted. *See Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006). Court costs are not punitive, however, and need not be included in the oral pronouncement of sentence as a precondition to their inclusion in the written judgment. *Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009).

13

Appellant also asserts that the judgment does not give him the proper amount of jail time credit. *See* Tex. Code Crim. Proc. Ann. art. 42.03, § 2(a) (West Supp. 2009). The judgment states that appellant is to receive credit for time spent in jail from December 28, 2005 to June 11, 2007, which we calculate to be 530 days. Appellant refers us to this statement by defense counsel at sentencing: "I've been presented here a document that indicates he has 638 days [jail credit]." The document to which counsel referred is not in the record. We do not have sufficient information before us to determine whether the time credit awarded in the judgment is correct. If appellant can document his claim to additional jail time credit, he should apply to the district court for a judgment nunc pro tunc. *See Ex parte Ybarra*, 149 S.W.3d 147, 148 (Tex. Crim. App. 2004). Issue eight is sustained in part and overruled in part.

The district court judgment is reformed to delete the fine and restitution. As reformed, the judgment is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Modified and, as Modified, Affirmed

Filed: October 27, 2009

Do Not Publish