

**MEMORANDUM OPINION**

No. 04-08-00249-CR, 04-08-00703-CR, and 04-08-00704-CR

Joe Luis **GUERRERO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2005-CR-9680B, 2005-CR-9682, and 2005-CR-9681-A
Honorable Pat Priest, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  August 19, 2009

AFFIRMED

Appellant Joe Luis Guerrero was charged with the murders of three different individuals:

Jose Ledesma, Diana Barrett, and Alberto Daniel Astran.[1]  In each case, Guerrero filed a pre-trial

motion to suppress based on a single recorded statement.  The trial court denied the motion and

---

[1]  Guerrero was charged with the murder of Jose Ledesma in cause number 2005-CR-9680B and corresponding appeal number 04-08-00249-CR; the murder of Diana Barrett in cause number 2005-CR-9682 and corresponding appeal number 04-08-00703-CR; and the murder of Alberto Daniel Astran in cause number 2005-CR-9681-A and corresponding appeal number 04-08-00704-CR.

Guerrero was found guilty by a jury for the murder of Jose Ledesma and assessed punishment in the amount of fifty-one years confinement in the Institutional Division of the Texas Department of Criminal Justice. Guerrero subsequently entered guilty pleas to the murders of Barrett and Astran based on the same recorded statement. Guerrero now appeals the trial court's denial of the motions to suppress.

## BACKGROUND

Jose Ledesma was found dead in his trailer home with twenty-two gunshot wounds. San Antonio Police Department Detective Timm Angell, the lead investigator assigned to the case, developed evidence that Joe Guerrero was involved in the murder and obtained a warrant for Guerrero's arrest. Guerrero was arrested and taken to the police station, where he was interviewed by Detective Angell. During the recorded interview, Guerrero admitted his involvement in all three murders and their connection to Ledesma's relationship with Guerrero's wife, Yolanda Guerrero. A video recording of the interview was admitted into evidence at the suppression hearing, and a redacted version of the recording was admitted during the Ledesma murder trial. The video recording offered at the suppression hearing, and in the Ledesma trial, includes confessions supporting the plea agreements in the Barrett and Astron cases.

## MOTION TO SUPPRESS

### A. Standard of Review

In reviewing the admissibility of an oral statement, we apply a bifurcated standard of review, affording "'almost total deference to a trial court's determination of the historical facts'" and reviewing de novo the court's application of the law. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). In doing so, we "afford almost total deference to the trial court's evaluation of the credibility and

demeanor of the witnesses." *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). Absent an abuse of discretion by the trial court, we will uphold the trial court's decision. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985).

## B. Arrest Pursuant to Illegal Arrest Warrant

In his first issue on appeal, Guerrero argues the trial court erred in admitting Guerrero's statement because the statement was obtained as a result of an illegal arrest warrant.

### 1. Probable Cause Affidavit

When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant. *Rodriguez v. State*, 232 S.W.3d 55, 59-60 (Tex. Crim. App. 2007); *Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex. Crim. App. 2004). As such, a reviewing court should not invalidate a warrant by interpreting the affidavit or complaint in a hyper technical manner. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Rodriguez v. State*, 232 S.W.3d 55, 59 (Tex. Crim. App. 2007). Instead, we consider the totality of the circumstances in determining whether the magistrate had a substantial basis for concluding that probable cause existed to support the issuance of the warrant. *Gates*, 462 U.S. at 238; *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996).

On the most basic level, an arrest warrant must provide the magistrate with sufficient information to support an independent judgment that probable cause exists for the warrant. *McFarland v. State*, 928 S.W.2d 482, 509-10 (Tex. Crim. App. 1996), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998). The sufficiency of an affidavit for an arrest warrant is limited to the four corners of the affidavit, viewing the affidavit in a common sense and realistic manner, and recognizing the magistrate's discretion to draw reasonable inferences. *See Moss v. State*, 75 S.W.3d 132, 140 (Tex. App.—San Antonio

2002, pet. ref'd); *see also Rodriguez*, 232 S.W.3d at 61; *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

Probable cause requires the affiant to demonstrate that there is a probability that the accused committed an offense, not that the evidence proves the suspect's guilt beyond a reasonable doubt. *Moss*, 75 S.W.3d at 140. As Guerrero suggests, two of the circumstances considered when the affiant relies on representations by an informant include the reliability or veracity of the informant and the basis of the informant's knowledge. *See Gates*, 462 U.S. at 233; *State v. Ozuna*, 88 S.W.3d 307, 310 (Tex. App.—San Antonio 2002, pet. ref'd); *Martin v. State*, 67 S.W.3d 340, 344 (Tex. App.—Texarkana 2001, pet. ref'd). The validity of the affidavit does not require proof of both, and a deficiency in one may be offset by a strong showing of the other. *Martin*, 67 S.W.3d at 344.

Moreover, as long as the affidavit sets forth the affiant's belief that the informant was credible or that his information was reliable, the affidavit need not disclose the affiant's personal observations. *Ozuna*, 88 S.W.3d at 310. As this court held in *State v. Ozuna*, the trial court considers several factors in determining the informant's credibility: (1) whether the informant presented first hand observations, (2) the degree of detail provided by the informant, (3) whether reasonable corroboration of the informant's statements existed, and (4) whether the informant testified at the probable cause hearing. *Id*. at 311.

### 2. Application

With these standards in mind, we look to the affidavit before us. Det. Angell drafted and signed the affidavit for Guerrero's arrest. Contrary to Guerrero's assertions, the affidavit did not rely solely on the statement of the unnamed witness/informant. Det. Angell's affidavit provides, in relevant part, the following facts:

- Guerrero was identified as the actor/defendant and Jose Angel Ledesma was identified as the victim.

- Det. Angell read police reports of the other officers working the case including: finding Ledesma "face down in a fetal position and covered in blood"; several spent nine millimeter shell casings were located at the scene; numerous small pieces of paper were scattered about the floor; and the victim's wallet was not located by the officers.

- Det. Angell read the sworn statement of Odilia Mata, Ledesma's sister, providing that around 9:00 p.m. Ledesma received a telephone call wherein Ledesma assured the caller that he would be at his residence later that evening

- Det. Angell read the statement of Mike McDonald, the manager of the shooting range, who relayed that after Guerrero and his wife separated, his wife stayed with Ledesma and that Guerrero threatened Ledesma with a loaded firearm.

- Det. Angell examined Ledesma's cellular telephone which revealed a call received from the unnamed informant's cellular telephone at approximately 9:09 p.m.

- Det. Angell verified two previous police reports filed within the previous two months against Guerrero for threatening behavior.

- Det. Angell obtained detailed information from the unnamed witness, including: Yolanda asked her to babysit the children; Yolanda used her cellular telephone to call Ledesma; Yolanda told her that she, Guerrero, and "Phillip" drove to Ledesma's trailer; Yolanda heard several shots; Guerrero forced Yolanda to enter the trailer and look at Ledesma's body; Yolanda saw Guerrero take Ledesma's wallet after emptying its contents; and when Guerrero and Yolanda returned, Guerrero stated "it's done" and then told her that "three people were dead because of Yolanda."

- Det. Angell confirmed that information provided by the unnamed witness was never released to the media and that Ledesma's wallet was not found at the crime scene.

Within the four corners of the affidavit, Det. Angell set out the information he received and the lengths to which he went to corroborate that information. Here, the magistrate could conclude the information came from the witness's personal observations. *See Lockett v. State*,

- 5 -

879 S.W.2d 184, 188 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd); *White v. State*, 746 S.W.2d 775, 778 (Tex. App.—Dallas 1985, no pet.). Moreover, the witness provided detailed information that Det. Angell was able to reasonably corroborate. *See Ozuna*, 88 S.W.3d at 310; *see also Nelson v. State*, No. 07-02-0527-CR, 2004 WL 1947809, at *2 (Tex. App.—Amarillo 2004, pet. ref'd) (not designated for publication) ("[W]hen someone brags about committing a particular criminal act and that admission is relayed to an independent magistrate via affidavit, it is within the realm of common sense to conclude that there exists a reasonable chance that the braggart did that about which he brags."). The affidavit sets out, in detail, the basis for Det. Angell's claim of probable cause to believe Ledesma's murder was committed by Guerrero and more than adequately sets out probable cause to support the issuance of the warrant. Considering the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed to support the issuance of the warrant for Guerrero's arrest. *See Gates*, 462 U.S. at 238; *Ozuna*, 88 S.W.3d at 310. Accordingly, the trial court did not err by denying Guerrero's motion to suppress. We overrule Guerrero's first issue on appeal.

## C. Trial Court's Admission of the Statement

In his next four issues on appeal, Guerrero asserts the trial court erred in admitting into evidence a video recorded statement given by Guerrero to Det. Angell because it was neither voluntarily nor intelligently given. *See Martinez v. State*, 131 S.W.3d 22, 35 (Tex. App.—San Antonio 2003, no pet.). We examine the voluntariness of a statement based on the totality of the circumstances. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). At the hearing, "[t]he trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding may not be disturbed on appeal absent a clear abuse of discretion." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *accord Martinez*, 131 S.W.3d at 35. The

prosecution bears the burden of proof at the hearing on admissibility and "must prove by a preponderance of the evidence that the defendant's statement was given voluntarily." *Alvarado*, 912 S.W.2d at 211; *Martinez*, 131 S.W.3d at 35. Because the facts surrounding the confession are not in dispute, the matter at issue is a question of law—whether Guerrero's statement is admissible under article 38.22 § 3(a)(2). *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § (3)(a)(2) (Vernon 2005). We, therefore, apply a de novo review. *See Guzman*, 955 S.W.2d at 89.

*1. Trial Court's Findings of Fact and Conclusions of Law*

The trial court made findings of fact and conclusions of law based upon the testimony at the suppression hearing.

- Guerrero was read his required rights subject to article 38.22 and specifically with regard to section 3 of article 38.22.

- Guerrero knowingly, intelligently, and voluntarily waived his rights.

- Guerrero did not hesitate, "[h]e just kept talking."

- Looking at the four corners of the affidavit, the warrant was valid and had the magistrate requested further information, Det. Angell certainly would have provided the name of the particular witness to the magistrate.

- The magistrate did not request the witness's name.

- Based on the information within the affidavit, there was probable cause to sign the arrest warrant.

- There were no threats, no coercion, nor any promises made to Guerrero.

- There were no specific promises made to Guerrero with regards to the statements he made.

- Guerrero indicated on the video recording that he understood his rights.

- Neither article 38.22 nor case law require Guerrero to make an express waiver of his legal rights.

- Det. Angell explained to Guerrero his opportunity to obtain an attorney, and assured Guerrero that he would get him a lawyer and he would stop all interviews.

Guerrero groups his voluntariness arguments based on (1) lack of waiver, (2) violation of his right to remain silent and to counsel, (3) coercion, and (4) improper inducement.

*2. Lack of Waiver*

The *Miranda* warnings "were established to safeguard an uncounseled individual's constitutional privilege against self-incrimination during custodial interrogation." *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)); *accord* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2(a), (b) (Vernon 2005). The record clearly establishes that before Guerrero made any statements, Det. Angell read Guerrero his *Miranda* rights, and Guerrero indicated he understood his rights. Guerrero, however, argues Det. Angell failed to obtain his signature on the *Miranda* warnings card.

Nothing in article 38.22, however, requires an accused to read or sign the statutory warnings in order for the waiver to be valid. TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ 2, 3(a) (Vernon 2005). It is only required that the accused receive the warnings and then "knowingly, intelligently and voluntarily waive[] the rights set out in the warnings." *Id*. Furthermore, in *State v. Oliver*, this court noted the "Court of Criminal Appeals has approved the inference of a waiver from the totality of the circumstances in the situation where an oral confession contains a recitation of the article 38.22 warnings and the defendant indicates he understands his rights and proceeds without hesitation to participate in the interview." *State v. Oliver*, 29 S.W.3d 190, 193 (Tex. App.—San Antonio 2000, pet. ref'd); *see also Barefield v. State*, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989), *overruled on other grounds by Zimmerman v. State*, 860 S.W.2d 89, 94 (Tex. Crim. App. 1993); *Turner v. State*, 252 S.W.3d 571, 583-84 (Tex. App.—Houston [14th

Dist.] 2008, pet. ref'd), *cert. denied*, 129 S. Ct. 1325 (2009); *Hargrove v. State*, 162 S.W.3d 313, 318-19 (Tex. App.—Fort Worth 2005, pet. ref'd).

In the present case, Det. Angell properly advised Guerrero of his rights and asked Guerrero if he understood his rights. Guerrero's actions indicated not only that he understood his rights, but also that he was familiar with these rights. Thereafter, Guerrero proceeded to answer Det. Angell's questions, slowly at first, and then with greater detail as the interview progressed. Thus, based on the totality of the circumstances, we conclude that Guerrero validly waived his rights under *Miranda* and article 38.22.

*3. Violation of Right to Remain Silent and Right to Counsel*

Guerrero argues that he invoked his right to counsel when he "unequivocally told Detective Angell that he might desire the presence of an attorney." When a person is in custody, interrogation must cease if the person invokes one of the rights mentioned in the warnings required by *Miranda*. *Miranda*, 384 U.S. at 473-74; *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996). In questions of a violation of a defendant's right to counsel, we apply *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). *Edwards*' bright-line rule provides that once an accused has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id*. The defendant must, however, make "some statement that can reasonably be construed as an expression of a desire for counsel in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) (emphasis removed). More specifically, an accused's invocation of his rights must be unambiguous to trigger this requirement, and officers are under no duty to clarify ambiguous remarks. *Davis v. United States*, 512 U.S. 452,

459 (1994); *Dowthitt*, 931 S.W.2d at 257. Questions amounting to whether Guerrero's bond would be different if he was represented by counsel, or whether Det. Angell would take him back to the county jail if he asked for an attorney, are not unambiguous requests for counsel.

Guerrero next argues that Det. Angell's refusals to allow Guerrero to call his family and an attorney amounted to a violation of his rights. Det. Angell read Guerrero his *Miranda* warnings and told Guerrero that he could call an attorney. As the court stated in *Miranda*, "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473-74. Guerrero, however, never requested an attorney. Instead, Guerrero asked to call his sister to tell her that he had been arrested and to ask his mother to start gathering money for his bond and for an attorney. We do not regard this request to call his sister as an invocation of his right to counsel.

In his brief, Guerrero points to a litany of examples where he tells Det. Angell that he should not be talking "because of the threat and danger to his life and the lives of his family." In *Ramos v. State*, the Court of Criminal Appeals explained that an officer must cease questioning when a defendant makes "an unambiguous, unequivocal, and unqualified assertion of his right to remain silent." *Ramos v. State*, 245 S.W.3d 410, 418-19 (Tex. Crim. App. 2008). Although silence in the face of repeated questions by an officer can serve as an indication of the defendant's desire to invoke his right to remain silent, that was simply not the case between Det. Angell and Guerrero. *See id.* at 418. Guerrero never made any request to call an attorney nor was he promised differential treatment by not seeking counsel. *See Davis*, 512 U.S. at 461-62 ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."); *Dowthitt*, 931 S.W.2d at 257.

*4. Coercion*

To be admissible, a confession must be voluntarily given and free from coercion or improper influences. *See Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). The ultimate question with regard to coercion is whether the defendant's "will was overborne" by the officer's actions. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *accord Weaver v. State*, 265 S.W.3d 523, 534 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). "A statement is 'involuntary' . . . only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado*, 912 S.W.2d at 211. An appellate court considers multiple factors, including the "'length of detention, incommunicado or prolonged [interrogation], denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality.'" *Nenno v. State*, 970 S.W.2d 549, 557 (Tex. Crim. App. 1998) (quoting *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985)), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999).

Guerrero alleges that his mental problems and later determination of incompetency made him more receptive to police coercion. *See Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995) (stating that a defendant's mental deficiency alone is not determinative of the voluntariness of the confession, but is only one factor to be considered). Absent evidence of police coercion related to the taking of the confession, a defendant's mental condition alone should not render the statement involuntary on constitutional grounds. *See Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). In considering the impact of a defendant's mental deficiency, "[t]he question is whether the accused's mental impairment is so severe that he is

incapable of understanding the meaning and effect of his confession." *Cornealius v. State*, 870 S.W.2d 169, 175 (Tex. App.—Houston [14th Dist.] 1994), *aff'd*, 900 S.W.2d 731 (Tex. Crim. App. 1995). In this case, there is no evidence in the record or on the video recording demonstrating that Guerrero's mental impairment, if any, was so severe that he was incapable of understanding the meaning and effect of his confession. *See Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970). To the contrary, Guerrero was lucid and his answers to Det. Angell's questions were appropriate.

Guerrero next argues that Det. Angell intentionally lied to him regarding evidence in an effort to coerce his confession. Neither trickery nor deception "make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process." *Creager*, 952 S.W.2d at 856. "Misrepresentations made by the police to a suspect during an interrogation [are] a relevant factor in assessing whether the suspect's confession was voluntary, but it is insufficient to render an otherwise voluntary confession inadmissible." *Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996) (citing *Frazier v. Cupp*, 394 U.S. 731, 739, (1969)). "[T]he effect of a lie 'must be analyzed in the context of all the circumstances of the interrogation.'" *Mason v. State*, 116 S.W.3d 248, 257-58 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (quoting *Miller v. Fenton*, 796 F.2d 598, 607 (3d Cir. 1986)). We focus on whether Det. Angell's behavior was such as to overbear Guerrero's will and bring about a confession not freely determined. *Green*, 934 S.W.2d at 99-100. "Of the numerous types of police deception, a misrepresentation relating to an accused's connection to the crime is the least likely to render a confession involuntary." *Id.* at 100. An officer's misrepresentations that witnesses, fingerprints, and cellular telephone records links appellant to the crime merely relates to appellant's connection to the crime and were not the type of deception that likely causes an

involuntary confession. *See id.*; *see also Weaver*, 265 S.W.3d at 534 (deciding that officers' misrepresentations, during the accused's interrogation, that (1) witnesses saw him commit the crime, (2) his fingerprints were found, and (3) a videotape showed his involvement in the crime, did not make the accused's statement involuntary). Taken in context, we conclude that Det. Angell's statements were not calculated to lead Guerrero to make an untruthful confession. *See Creager*, 952 S.W.2d at 856; *Martinez v. State*, 131 S.W.3d 22, 34 n.2 (Tex. App.—San Antonio 2003, no pet.).

Guerrero next contends that Det. Angell intentionally withheld the fact that the interview was being recorded in order to "trick" him into confessing to his crime. Article 38.22, section 3(a) governs the admissibility of oral confessions. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a) (Vernon 2005). No portion of this statute requires the accused to be informed that the statement is being recorded. *Id*. Det. Angell's subjective reasoning for intentionally not informing Guerrero of the recording is no longer independently relevant to the admissibility of Guerrero's oral confession. *See Moore v. State*, 882 S.W.2d 844, 846 (Tex. Crim. App. 1994); *accord Esquivel v. State*, No. 04-02-00203-CR, 2003 WL 21697227, at *3 (Tex. App.—San Antonio July 23, 2003, pet. ref'd) (mem. op., not designated for publication).

### 5. Improper Inducements

Guerrero next argues that Det. Angell made promises and improper inducements which caused him to confess untruthfully. "Before a promise will render a confession inadmissible, it must be shown that the promise induced the confession." *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). In order to render a confession inadmissible, "the promise must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature

that a defendant would speak untruthfully in response thereto." *Id.*; *accord Creager*, 952 S.W.2d at 856.

"Improper *inducements*, on the other hand, must be of exceptional character before they will invalidate an otherwise voluntary confession." *Espinosa v. State*, 899 S.W.2d 359, 364 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). A confession, however, is not rendered inadmissible because it is made after an accused has been told by the officer taking the confession that it would be best to tell the truth or "it would be best to go ahead and make a statement," or "it would be better to get his business straightened up." *Coursey v. State*, 457 S.W.2d 565, 568 (Tex. Crim. App. 1970); *see also Dykes v. State*, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983) (rejecting the defendant's argument that the officer's general statement that he would help the defendant if he cooperated with him was improper and induced the defendant's confession).

Guerrero complains that Det. Angell's encouragement to tell the truth, or speak out, because it would benefit Guerrero was improper. Yet the testimony Guerrero references is Det. Angell's request for Guerrero to disclose the shooter and to be truthful. Det. Angell's recorded statements were not threats or promises. Furthermore, general statements about how a confession might result in more lenient treatment will not invalidate the confession. *See Espinosa*, 899 S.W.2d at 364 (acknowledging that although the promise of less prison time might influence a defendant to make a statement, it will not generally induce him to confess falsely); *Muniz*, 851 S.W.2d at 254 (asserting that an officer's statement—that leniency was sometimes shown to a defendant who confessed—was not a promise).

Accordingly, we conclude that the comments that Guerrero alleges were improper inducements are not of such a nature as to likely influence an untruthful statement. *See Creager*,

952 S.W.2d at 856. More specifically, the record does not substantiate that Det. Angell's statements improperly influenced Guerrero.

      *6. Conclusion*

The trial court's findings of fact clearly accepted the veracity of Det. Angell's testimony. Viewing the totality of the circumstances, the record supports the trial court's credibility determination and its conclusion that Guerrero's statement was voluntary. *See Wyatt v. State*, 23 S.W.3d 18, 24-25 (Tex. Crim. App. 2000). As discussed, the record shows that (1) Guerrero was given the required statutory warnings, (2) Guerrero stated that he understood his rights, and (3) Guerrero nonetheless waived his rights and made the statement to Det. Angell. The record further reflects that the trial court viewed the video-recorded statement and could assess Guerrero's demeanor at the time of the statement. We conclude that no abuse of discretion has been shown with regard to the trial court's denial of Guerrero's motion to suppress. Accordingly, we overrule Guerrero's remaining issues on appeal.

Rebecca Simmons, Justice

DO NOT PUBLISH

- 15 -